943 So.2d 1118 (2006)
STATE of Louisiana
v.
Tyree YOUNG.
No. 2006 KA 0234.
Court of Appeal of Louisiana, First Circuit.
September 15, 2006.
*1120 Walter P. Reed, Covington, Kathryn Landry, Baton Rouge, for Appellee, State of Louisiana.
Frank Sloan, Mandeville, for Defendant/Appellant, Tyree Young.
Before: CARTER, C.J., WHIPPLE and McDONALD, JJ.
WHIPPLE, J.
The defendant, Tyree Young, was charged by bill of information with one count of possession of cocaine (count I), a violation of LSA-R.S. 40:967(C), and one count of possession of methylenedioxy-methamphetamine (count II), a violation of LSA-R.S. 40:966(C). He pled not guilty on both counts. He moved to suppress the evidence sought to be used against him as obtained in violation of his constitutional rights, but the motions were denied. Following a jury trial, he was found guilty as charged on both counts. On each count, count I and count II, he was sentenced to five years at hard labor, sentences to run concurrently.
Thereafter, the State filed a habitual offender bill of information alleging, in regard to count II, the defendant was a habitual offender. Predicate # 1 was set forth as the defendant's March 14, 1997 guilty plea, under Twenty-Second Judicial District Court Docket # 258777, to possession of cocaine. Predicate # 2 was set forth as the defendant's March 14, 1997 guilty plea, under Twenty-Second Judicial District Court Docket # 265856, to possession of stolen things. Predicate # 3 was set forth as the defendant's October 16, 1997 guilty plea, under Twenty-Second Judicial District Court Docket # 274804, to unauthorized entry of an inhabited dwelling. Predicate # 4 was set forth as the defendant's October 16, 1997 guilty plea, under Twenty-Second Judicial District Court Docket # 274865, to distribution of cocaine. Predicate # 5 was set forth as the defendant's March 1, 1999 guilty plea, under Twenty-Second Judicial District Court Docket # 296359, to distribution of cocaine.
Following a hearing, the defendant was adjudged a fourth felony habitual offender on count II, the sentence previously imposed on count II was vacated, and he was sentenced to twenty years at hard labor. He now appeals, designating one assignment of error in which he contends "[t]he trial court erred and/or abused its discretion in denying the defendant's motion to suppress the evidence." We affirm *1121 the conviction and sentence on count I, vacate the conviction and habitual offender adjudication and sentence on count II, and remand.

FACTS
Louisiana Probation and Parole Officer Mike Phelps testified at the first hearing on defendant's motions to suppress and at trial.[1] On July 23, 2003, Officer Lusto and he went to 1495 West Hall Avenue in or near Slidell. The officers were attempting to execute an arrest warrant against Larry Smith for violations of his probation. They had unsuccessfully searched for Smith at his primary address, and Officer Lusto was aware that Smith frequented the West Hall Avenue home, which was his daughter's residence.
Smith answered the door at the West Hall Avenue home, but then moved back into the home, yelling out that he was being arrested. As the officers stepped into the home to handcuff Smith, they saw a man at the kitchen table and a woman in the living room. The woman in the living room alerted another woman to the presence of the parole officers. The officers became concerned for their safety. They were concerned about the use of weapons against them and were aware that convicted felons often associated with one another. The officers were also aware that it was a violation of the conditions of probation and parole for convicted felons to associate with one another. They spoke to Smith's daughter, Lakeisha Sylve, and verified she was a resident of the home. Officer Phelps asked Sylve if anyone else was present in the residence. Sylve replied no one else was present "that she knew of[.]" Officer Phelps asked for permission to "look[,]" and Sylve stated, "You can search the whole house if you would like." While speaking to Sylve, Officer Phelps noticed a piece of cellophane in the ashtray on the kitchen table containing a substance that he believed, based on his eight years experience in law enforcement, to be marijuana.
In addition to granting consent to search the home, Sylve accompanied Officer Phelps walking through the home, identifying the different rooms. When Sylve entered the master bedroom, however, she appeared startled. The defendant was standing between the closet and the bathroom doors in the room. Officer Phelps patted down the defendant and discovered $587.00 in his pocket. Officer Phelps then escorted the defendant into the kitchen.
Thereafter, Officer Phelps returned to the master bedroom to finish clearing the room. In the garbage can, he saw cigar tobacco and a bag containing what appeared to be powder cocaine residue. Officer Phelps was aware that drug users often removed the tobacco from cigars and replaced it with marijuana. Officer Phelps asked Sylve if any narcotics or weapons were present in the home. Sylve told Officer Phelps he was "welcome to search the residence[,]" and that he could "turn it upside down or whatever." Officer Phelps looked in the closet of the master bedroom and saw a bag of powder cocaine located approximately three feet from where the defendant had been standing. The officers then advised everyone present of their Miranda rights.[2] Officer Phelps did not threaten Sylve at any time.
*1122 Smith and the defendant were advised they would be screened for drugs. Smith admitted he had been smoking crack cocaine. The defendant conceded he had been snorting cocaine. The defendant subsequently admitted he had been partying for a couple of days, using cocaine and ecstasy.[3] Officer Phelps did not promise the defendant anything in return for his statement. Nor did Officer Phelps pressure, coerce, threaten, or beat the defendant in order to obtain the statement.
Sylve also testified at trial. She claimed Officer Phelps was already in her living room when she came out to see what was occurring. According to Sylve, her father, Smith, had been arrested. She asked the probation officers about the charge against Smith and the potential sentence involved. Officer Phelps asked Sylve if anyone else was present in the home, and she replied negatively. Sylve conceded the defendant and a quantity of cocaine were subsequently discovered in her room. She also did not dispute that marijuana was present on the kitchen table. According to Sylve, however, Officer Phelps first asked for consent to search and then, only for consent to search the defendant's belongings after finding the defendant.
On cross-examination, Sylve indicated she wanted to cooperate with the police when they came to her house, and she had no problem with Officer Phelps confirming her claim that no one else was present in the home, especially after he heard a noise in the back of the house. She claimed Officer Phelps asked her for consent after he discovered the cocaine and her .22 caliber handgun. She also claimed the cocaine was not in plain sight, but was underneath clothes in a basket.

MOTIONS TO SUPPRESS
In his sole assignment of error, the defendant argues neither consent nor exigent circumstances excused the warrantless entry of the home beyond the point necessary to secure the arrest of Mr. Smith.[4]
The Fourth Amendment to the United States Constitution and article I, § 5 of the Louisiana Constitution protect people against unreasonable searches and seizures. Subject only to a few well-established exceptions, a search or seizure conducted without a warrant issued upon probable cause is constitutionally prohibited. Once a defendant makes an initial showing that a warrantless search or seizure occurred, the burden of proof shifts to the State to affirmatively show it was justified under one of the narrow exceptions to the rule requiring a search warrant. LSA-C.Cr.P. art. 703(D); State v. Lowery, XXXX-XXXX, p. 6 (La.App. 1st Cir.12/17/04), 890 So.2d 711, 717, writ denied, XXXX-XXXX (La.5/13/05), 902 So.2d 1018. A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the district court had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Jones, XXXX-XXXX, p. 4 (La.App. 1st Cir.11/8/02), 835 So.2d 703, 706, writ denied, 2002-2989 (La.4/21/03), 841 So.2d 791.
A search conducted pursuant to consent is an exception to the requirements of both a warrant and probable cause. State v. Johnson, 98-0264, p. 5 (La.App. 1st Cir.12/28/98), 728 So.2d 885, 887. An exception to the search-warrant requirement also exists for items in plain *1123 view. Two conditions must be satisfied to trigger the applicability of the doctrine: (1) there must be a prior justification for an intrusion into the protected area; (2) it must be immediately apparent without close inspection that the items are evidence or contraband. "Immediately apparent" requires no more than probable cause to associate the property with criminal activity. State v. Howard, XXXX-XXXX, p. 8 (La.App. 1st Cir.3/28/02), 814 So.2d 47, 53, writ denied, XXXX-XXXX (La.5/16/03), 843 So.2d 1120.
Prior to trial, the defendant moved to suppress the evidence sought to be used against him as obtained in violation of his constitutional rights. Following hearings, the motions were denied. The trial court found the probation officers: (1) had a right to be at the West Hall Avenue home; (2) entered the home to handcuff Smith; (3) acted with Sylve's knowledge and permission once inside the home; and (4) did not use duress to obtain consent.
On review, we find the trial court did not abuse its discretion in denying the motions to suppress in regard to count I. The probation officers were attempting to execute an arrest warrant for Smith when they knocked on the door of the West Hall Avenue home. When Smith opened the door and stepped back into the home, the probation officers had to enter the home to arrest him. Sylve then gave them consent to search the home. The cocaine subsequently discovered in the closet was in plain view. Moreover, a warrantless search of the home was justified on the basis of the exigent circumstances presented by the risk of destruction of evidence. See Georgia v. Randolph, ___ U.S. ___, ___ n. 6, 126 S.Ct. 1515, 1524 n. 6, 164 L.Ed.2d 208 (2006). Evidence of drug use was evident in the home, and the delay necessary to obtain a warrant threatened the destruction of that evidence.
This assignment of error is without merit.

PATENT ERROR
We note patent error and patent sentencing error.
The punishment for count I included the possibility of confinement at hard labor. LSA-R.S. 40:967(C)(2). The punishment for count II was necessarily confinement at hard labor. LSA-R.S. 40:966(C)(3). A case in which the punishment may be confinement at hard labor shall be tried before a jury of six persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. La. Const. art. I, § 17(A); LSA-C.Cr.P. art. 782(A). Offenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Cases so joined shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. LSA-C.Cr.P. art. 493.2. The instant case was tried before a six-person jury.
Unanimous conviction by a twelve-person jury where La. Const. art. I, § 17(A) and LSA-C.Cr.P. art. 782(A) require a six-person jury has recently been held to constitute a trial error subject to harmless error analysis. State v. Jones, XXXX-XXXX, p. 4 (La.2/22/06), 922 So.2d 508, 511. The denial in this case, however, of at least ten concurring votes of a twelve-person *1124 jury on count II was not harmless error.[5]
In Jones, the Louisiana Supreme Court cited with approval the dissenting opinion of Justice Dennis in State v. Nedds, 364 So.2d 588 (La.1978). Therein, Justice Dennis found that where a defendant is convicted by a larger jury, he has, in effect, been provided greater protection than the minimum required by law. Nedds, 364 So.2d at 589. Justice Dennis noted, however, remand would be justified where a defendant was convicted by a jury composed of fewer persons than the law mandated. Id. Further, in his concurring opinion in Jones, Justice Weimer recognized that the various provisions for the number of jurors are tied to the gravity of the offense. Jones, XXXX-XXXX at p. 6, 922 So.2d at 517. Indeed, count II in the instant case is serious enough that, in combination with some of the defendant's predicate offenses as a fourth felony habitual offender, it subjects him to a life term of imprisonment without benefit of parole, probation, or suspension of sentence. LSA-R.S. 15:529.1(A)(1)(c)(ii).
We also note the sentence imposed on count II was illegal. The defendant was adjudged a fourth felony habitual offender. Count II, predicate # 4, and predicate # 5 were violations of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more. LSA-R.S. 40:966(C)(3); LSA-R.S. 40:967(B). Thus, the legal sentence in this matter was imprisonment for the remainder of the defendant's natural life, without benefit of parole, probation, or suspension of sentence. LSA-R.S. 15:529.1(A)(1)(c)(ii).[6]

DECREE
Accordingly, the conviction and sentence on count I are affirmed, the conviction on count II and the habitual offender adjudication and sentence on count II are vacated, and this matter is remanded for further proceedings.
CONVICTION AND SENTENCE ON COUNT I AFFIRMED; CONVICTION ON COUNT II AND HABITUAL OFFENDER ADJUDICATION AND SENTENCE ON COUNT II VACATED; AND REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] In determining whether the rulings on the defendant's motions to suppress were correct, we are not limited to the evidence adduced at the hearings on the motions. We may also consider all pertinent evidence given at the trial of the case. State v. Chopin, 372 So.2d 1222, 1223 n. 2 (La.1979).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] "Ecstasy" is the street name of methylenedioxymethamphetamine or MDMA.
[4] Due to patent error requiring that count II be reversed, we address the assignment of error in regard to count I only.
[5] Having determined that the jury trial error in regard to count II was a constitutional error that was not harmless, we need not, and thus, do not address whether or not the error was structural. As noted in Jones, structural error has been described as one that affects the framework within which the trial proceeds. Further, constitutional structural errors have been held to warrant automatic reversal. Jones, XXXX-XXXX at p. 4, 922 So.2d at 511.
[6] The trial court was obligated to impose this mandatory minimum sentence unless it found the sentence to be constitutionally excessive in this case. See State v. Johnson, 97-1906, p. 8 (La.3/4/98), 709 So.2d 672, 676-77; State v. Dorthey, 623 So.2d 1276, 1280-81 (La.1993). No such finding was made.