# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-1061


STATE OF LOUISIANA

VERSUS

LEROY BREAUX


************


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 8751-07
HONORABLE ROBERT WYATT, DISTRICT JUDGE


************


## MICHAEL G. SULLIVAN
## JUDGE


************


Court composed of John D. Saunders, Michael G. Sullivan, and James T. Genovese, Judges.


### AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART; AND REMANDED WITH INSTRUCTIONS.


Shane K. Hinch
Attorney at Law
1111 Ryan Street
Lake Charles, Louisiana 70601
(337) 494-5682
Counsel for Defendant/Appellant:
    Leroy Breaux

John F. DeRosier
District Attorney
Carla S. Sigler
Assistant District Attorney
1020 Ryan Street
Lake Charles, Louisiana 70601
(337) 437-3400
Counsel for:
    State of Louisiana

**SULLIVAN, Judge.**

Defendant, Leroy Breaux, was indicted on five counts of aggravated rape, in violation of La.R.S. 14:42. Later, one count of the indictment was nolle prosequied due to the death of the victim. Trial took place on April 15, 2008 through April 17, 2008, following which a twelve-person jury found Defendant guilty as charged on three counts of aggravated rape and guilty of attempted aggravated rape on the remaining count.

A motion for judgment of acquittal filed by Defendant on May 13, 2008 was denied by the trial court without a hearing. On May 14, 2008, Defendant was sentenced to life imprisonment on each count of aggravated rape and fifty years at hard labor for the attempted aggravated rape conviction. The trial court ordered all of the sentences to be served without benefit of probation, parole, and suspension of sentence and to run concurrently with each other. Defendant now appeals on the basis of insufficiency of the evidence.

For the following reasons, we affirm in part, reverse in part, amend in part, and remand with instructions.

## FACTS

The indictment charged that: (1) Defendant engaged in sexual intercourse with A.C.,[1] between May 1, 1977 and December 31, 1980; (2) Defendant engaged in sexual intercourse with his niece, B.P., between January 1, 1961 and December 31, 1968; (3) Defendant engaged in sexual intercourse with his niece, R.C., between January 1, 1963 and December 31, 1970; and (4) Defendant engaged in sexual intercourse with L.G., between January 1970 and June 1976. At trial, the State

---

[1]The initials of the victims are used in compliance with La.R.S. 46:1844(W).

presented testimony from the victim on each count of aggravated rape; no other evidence was adduced. Each victim testified that Defendant forced them to have sexual intercourse when they were under the age of twelve.

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, this court reviews all appeals for errors patent on the face of the record. After review, we have found numerous errors patent.

Between 1950 and September 8, 1977, the penalty for a violation of La.R.S. 14:42 was death.[2] Most of the alleged violations by Defendant occurred during this period.

In *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726 (1972), the United States Supreme Court reviewed a murder and two rape cases and held the imposition and carrying out of the death penalty in those three cases constituted cruel and unusual punishment in violation of the eighth and fourteenth amendments.

Thereafter, in *State v. Selman,* 300 So.2d 467 (La.1974), the Louisiana Supreme Court considered the question of whether amendments to La.Code Crim.P. arts. 814 and 817, relative to qualifying verdicts, made by the legislature after *Furman* was decided, removed the infirmities in our law which precluded the imposition of the death penalty for aggravated rape in Louisiana since *Furman*. After discussing the nature of the crime of aggravated rape in light of the eighth and fourteenth amendments of the United States Constitution and with an eye to the infirmities that caused the reversal of the convictions in *Furman*, we concluded "that

---

[2]Effective September 9, 1977, La.R.S. 14:42 was amended to provide a penalty of life imprisonment without the benefit of parole, probation, or suspension of sentence. 1977 La. Acts No. 343, § 1.

2

the death penalty for aggravated rape is not per se cruel and unusual punishment."
*Id.* at 472.

However, in *Selman v. Louisiana*, 428 U.S. 906, 96 S.Ct. 3214 (1976), the United States Supreme Court disagreed with the Louisiana Supreme Court and held that the imposition and carrying out of the death penalty for an aggravated rape conviction in Louisiana constituted cruel and unusual punishment.

Consequently, at the time Defendant allegedly committed most of the offensive acts at issue herein, the penalty for these offenses was death (although that penalty could not be carried out at the time of trial). Thus, the question arises as to whether the procedural rules applicable to the prosecution of capital offenses should have been applied in Defendant's case.

In *State v. Rich,* 368 So.2d 1083 (La.1979), the defendant was convicted of aggravated rape which occurred in August 1977. At that time, aggravated rape was a capital crime in Louisiana, but imposition of the death penalty was not legally available in Louisiana. The trial court had refused to sequester the jury, despite the defendant's request that it be done, and had instructed the jury that ten jurors, rather than twelve, needed to concur in order to reach a verdict. On review, the supreme court recognized as an error patent the trial judge's failure to procedurally treat the case as less than that of a capital offense. Accordingly, Rich's conviction and sentence were reversed, and the matter was remanded for a new trial.

However, in *State v. Carter*, 362 So.2d 510 (La.1978), the supreme court held differently. The court addressed the issue of misjoinder of aggravated rape (a capital offense at the time of commission of the offenses) with aggravated crime against nature and aggravated burglary (both punishable by confinement necessarily at hard

3

labor) because the modes of trial differed and held there was not a misjoinder, explaining, in pertinent part:

> The mode of trial is determined by the possible penalty. *La.Const. art. 1, § 17*: *State v. McZeal* [, *on rehearing*, 352 So.2d 592 (La.1977)], *supra*. Whereas aggravated rape, prior to the effective date of Act 343 of 1977, as a capital offense, was triable before a jury of twelve persons, all of whom must concur to render a verdict, the offense is now punishable by confinement necessarily at hard labor and is therefore triable before a jury of twelve persons, ten of whom must concur to render a verdict. Hence, the mode of trial for aggravated rape was changed as a result of the amendment to its penalty provision. Moreover, this change is procedural in nature. *State v. McZeal*, *supra*; *State v. Holmes*, 263 La. 685, 269 So.2d 207 (1972). *A procedural change which does not affect an accused's substantive rights in the prosecution of a criminal offense is applicable to the trial of the offense after the effective date of the change even though the particular offense was committed prior to that date.*

*Id.* at 513 (emphasis added) (footnote omitted).

In *State v. Williams,* 372 So.2d 559 (La.1979), the supreme court discussed the split in the court in the holdings of *Rich* and *Carter* and held:

> The writ is denied. On reconsideration of the common problem in *State of Louisiana v. Dave Carter*, 362 So.2d 510 (La.1978) and *State of La. v. Rich*, 368 So.2d 1083, 1979 [sic], a majority of the court has decided that the better treatment is found in *State v. Rich*. *The unanimous verdict, the sequestration of the jury and other safeguards erected by statute for capital cases are too important to permit them to be retroactively erased.* Therefore, the jury in an aggravated rape case, when the rape occurred prior to September 9, 1977, the effective date of Act 343 of 1977, should return a unanimous verdict.

*Id.* at 560 (emphasis added).

In *State v. Goodley,* 398 So.2d 1068 (La.1981), the defendant was charged with first degree murder. The jury returned a responsive verdict of manslaughter, with ten of the twelve jurors concurring in the verdict. On error patent review, the supreme court reviewed whether or not the non-unanimous verdict was valid and held in pertinent part:

4

The Legislature, in enacting the controlling provision herein, relied on the severity of the punishment provided for a crime as the basis for its classification scheme in providing the number of jurors which must compose a jury and the number of jurors which must concur to render a verdict. . . .

Thus, the Legislature determined that for crimes that were so serious as to validly carry the death penalty, certain special procedural rules were additionally required, among which was the requirement of a unanimous jury to render a verdict. This determination is not based on an after the fact examination of what crime the defendant may eventually be convicted of, nor is it based on an after the fact examination of what sentence he receives. Rather, the scheme is based on a determination by the Legislature that certain crimes are so serious that they require more strict procedural safeguards than other less serious crimes. *It was determined that in charged capital offenses a unanimous verdict for conviction, not just sentencing, is necessary and there is no attendant provision giving the state the authority to alter that scheme on its own motion by simply stipulating that the death penalty will not be sought in a certain case.*

. . . .

[W]e find that a unanimous jury is required in a case where the defendant is being prosecuted under an unamended charge of first degree murder, a capital offense, to render any verdict, notwithstanding the fact that the state may have stipulated that it would not seek the death penalty.

*Id*. at 1070-71 (emphasis added) (footnote omitted). In footnote four of the opinion, the court stated:

This Court considered a similar issue in *State v. Jones*, 385 So.2d 786 (La.1980)[,] and in a brief per curiam writ grant in response to a pre-trial writ application recited that the "(c)rime of aggravated kidnapping is not capital, nor is it capital for procedural purposes." However, *Jones* is distinguishable from the case under consideration because *Jones* involved a situation where the death penalty provision had been declared unconstitutional, whereas here the death penalty provision is valid and enforceable, making first degree murder "a criminal case in which the punishment may be capital."

*Id*. at 1071.

In *State v. Self*, 98-39 (La.App. 3 Cir. 8/19/98), 719 So.2d 100, *writ denied*, 98-2454 (La. 1/8/99), 734 So.2d 1229, this court referred to *Jones*. In *Self*, the defendant

5

was charged with committing aggravated rape of a child under the age of twelve between June 1995 and March 1996. At that time, the Legislature had again amended La.R.S. 14:42 to provide the penalty was death, but the state waived the option of pursuing the death penalty. On appeal, this court addressed whether the trial court erred in instructing the jury that they were required to reach a verdict of ten out of twelve rather than a unanimous verdict as required for capital cases under La.Code Crim.P. art. 782 and whether the trial court erred in accepting the jury's non-unanimous verdict of eleven to one. Citing *Goodley*, this court held that because the death penalty was applicable at the time the defendant committed the act, the capital procedural rule of a unanimous jury applied. We further noted that the court in *Goodley* distinguished *Jones* based on the fact that *Jones* dealt with an offense wherein the death penalty had been declared unconstitutional.

In *State v. Schrader,* 518 So.2d 1024 (La.1988), *cert. denied*, 498 U.S. 903, 111 S.Ct. 265 (1990), the supreme court appeared to back away from footnote number four in *Goodley* which distinguished *Jones*. In *Schrader*, the defendant was charged with first degree murder, and the jury returned a responsive verdict of manslaughter. On error patent review, it was discovered that the jury had not been sequestered even though the charge was classified as a capital offense. The court stated, in pertinent part:

> We now hold, despite its long lineage, the jurisprudential presumption of prejudice for "capital cases" does not apply to a "capital case" where the defendant never faced the prospect of the death penalty and where counsel failed to press the point in the trial court, or object to the lack of sequestration. In the absence of actual prejudice, this right to sequestration is waived.
>
> . . . .

6

In the present case the defendant did not object to the lack of sequestration. Moreover, the potential impact on the fairness of the proceedings was no greater than for non-capital cases. It is true that the case remained "capital" under the procedural classification of our statutes; however, it was in fact not capital in the sense of the cases such as *Parker* and *Luquette* wherein this court presumed prejudice. That is, the defendant did not face the death penalty, nor did the jury face the heightened pressure inherent in having to consider the death penalty. Accordingly, the failure to sequester the jury in this case was not reversible error.

*Id.* at 1037-38.

In *State v. Marcantel*, 98-825 (La.App. 3 Cir. 12/22/99), 756 So.2d 366, *writ denied*, 00-208 (La. 8/31/00), 766 So.2d 1274, the defendant was charged with having committed aggravated rape of a victim under the age of twelve in 1996. On error patent review, this court addressed the issue of whether the jurors were sequestered from the moment they were sworn, as required by La.Code Crim.P. art. 791(B) in capital cases. This court explained, in pertinent part:

Although the State did not seek the death penalty, the case retained its capital classification for procedural purposes. *State v. Schrader*, 518 So.2d 1024 (La.1988), *cert. denied*, 498 U.S. 903, 111 S.Ct. 265, 112 L.Ed.2d 221 (1990). The charge, aggravated rape of a child under twelve, is punishable by death or life imprisonment. The record does not tell us why the State chose not to seek the death penalty. It is possible that the State or the trial court was under the belief that the death penalty had been declared unconstitutional.

. . . .

The present case is distinguishable from *Schrader* because the death penalty in the present case was ruled unconstitutional by district courts rather than by the United States Supreme Court. Additionally, the State's reason for not seeking the death penalty is unclear. Nevertheless, because the Defendant was not exposed to the death penalty, did not object to the lack of sequestration, and does not allege on appeal that he was prejudiced by the lack of sequestration, we find that the lack of sequestration (if the jury was in fact not sequestered) was harmless error.

*Id.* at 368-69.

Additionally, in *State v. Smith,* 01-1027 (La.App. 1 Cir. 2/15/02), 809 So.2d 556, the defendant was charged with having committed aggravated rape of a juvenile under the age of twelve in November 1976. In his writ application, the defendant argued that the trial court erred in denying his motion to quash indictment because the statute of limitations had run. More specifically, he argued that "because the death penalty for the aggravated rape statute in effect on the date of the offense had been declared unconstitutional, the offense was not a capital offense and, thus, the unlimited prescriptive period of La.Code Crim.P. art. 571 for instituting prosecution in capital cases did not apply." *Id.* at 561. On writ of review, the appellate court held in pertinent part:

> [A]lthough the death penalty may not be imposed in the instant case, article 571 still applies and there is no prescriptive period for the aggravated rape charge. Because the unlimited prescriptive period for capital cases applies, the court did not err when it denied the "motion to quash indictment because of running of statute of limitations."

*Id.* at 562.

In light of the foregoing, we conclude that the procedural rules for capital cases, such as unanimous jury and sequestration of the jury, should have been applied in this case.

### *Sequestration of the Jury*

Louisiana Code of Criminal Procedure Article 791(B) provides, "[i]n capital cases, after each juror is sworn he shall be sequestered, unless the state and the defense have jointly moved that the jury not be sequestered." A review of the record does not indicate whether the trial court sequestered the jury or whether the parties moved to not have the jury sequestered. However, Defendant did not object at trial for failure to sequester, and he did not assign this issue on appeal. Nevertheless, this

8

court has recognized this error as an error patent and applied the harmless error analysis. *Schrader,* 518 So.2d 1024; *Marcantel,* 756 So.2d 366; *State v. D.T.,* 08-814 (La. App. 3 Cir. 12/11/08), 998 So.2d 1258.

As noted above, the:

> [P]resumption of prejudice for "capital cases" does not apply to a "capital case" where the defendant never faced the prospect of the death penalty and where counsel failed to press the point in the trial court, or object to the lack of sequestration. In the absence of actual prejudice, this right to sequestration is waived.

*Schrader*, 518 So.2d at 1037. *See also, Marcantel*, 756 So.2d 366.

In this case, the death penalty could not be imposed, and the State did not seek it. Additionally, Defendant fails to assign this error in his appeal, and he fails to allege or prove any prejudice suffered by this possible error. Accordingly, we conclude that this error is harmless.

### *Unanimous Jury*

Louisiana Code of Criminal Procedure Article 782(A) (emphasis added) provides in pertinent part, "[c]ases in which punishment *may* be capital shall be tried by a jury of twelve jurors, all of whom must concur to render a verdict."

Defendant was *charged* with having committed the offensive acts against A.C. between May 1, 1977 and December 31, 1980. Between May 1, 1977 and September 8, 1977, the penalty for aggravated rape was death. Effective September 9, 1977, La.R.S. 14:42 was amended to provide a penalty of "life imprisonment without benefit of parole, probation, or suspension of sentence." 1977 La. Acts No. 343, § 1. Consequently, any offensive acts committed by Defendant between May 1, 1977 and September 8, 1977, would be classified as capital requiring a unanimous verdict; whereas, any offensive acts committed by Defendant after September 9, 1977 to

9

December 1980 would only require a verdict of ten out of twelve jurors. However, because on the face of the bill of indictment some of the allegations subjected Defendant to the penalty of death, we conclude that a unanimous verdict was required. *See Self*, 719 So.2d 100.

As to the charge of aggravated rape of A.C., the polling of the jury indicated a verdict of ten to two in favor of finding Defendant guilty. In capital cases where the trial court erred in accepting a non-unanimous verdict by the jury, the conviction has been reversed. *See Self*, 719 So.2d 100, *Goodley*, 398 So.2d 1068, and *Williams,* 372 So.2d 559. Consequently, because the jury failed to render a unanimous verdict, Defendant's conviction on the charge of aggravated rape of A.C. is reversed, the sentence is vacated and set aside, and the matter remanded to the trial court for further proceedings.[3]

### *Illegal Sentences*

At the sentencing hearing, the trial court imposed the following sentences:

> However, the law is very clear that under the three counts of aggravated rape, the sentence for those is life imprisonment. And this Court recognizes and so sentences Mr. Breaux on each one of those to life imprisonment, concurrent with each other.
>
> On the attempted aggravated rape, this Court sentences Mr. Breaux to 50 years Department of Corrections, concurrent with the life sentences.
>
> . . . .
>
> Yes, that is without benefit of probation, parole or suspension of sentence.

---

[3]A verdict returned by a jury composed of fewer than the correct number of jurors required by law is null. *See State v. Jenkins*, 406 So.2d 1352 (La.1981); *State v. Young,* 06-234 (La.App. 1 Cir. 9/15/06), 943 So.2d 1118, *writ denied*, 06-2488 (La. 5/4/07), 956 So.2d 606.

We are of the opinion that the trial court imposed each of Defendant's sentences without the benefit of probation, parole, or suspension of sentence.

*Attempted Aggravated Rape of B.P.*

The jury found Defendant guilty of attempted aggravated rape of B.P., which the State alleged was committed between January 1961 and December 1968. The evidence presented at trial indicated that the offenses occurred between 1961 and 1963. During this time period, La.R.S. 14:27(D)(1) provided that the penalty for attempted aggravated rape was not more than twenty years, and it did not provide for the sentence to be served without the benefit of probation, parole, or suspension.[4] Consequently, the trial court imposed an illegally excessive sentence.

Accordingly, Defendant's sentence for the attempted aggravated rape of B.P. is vacated and the matter is remanded to the trial court for resentencing.

*Aggravated Rapes of R.C. and L.G.*

Defendant was convicted of the aggravated rapes of R.C. and L.G. and sentenced to life imprisonment without the benefit of probation, parole, or suspension of sentence on each conviction. The evidence presented at trial indicated that the offensive acts against R.C. occurred from 1961 to 1964 and that some of the offensive acts against L.G. occurred from 1970 to 1971.

Between 1961 and 1971, death was the statutory penalty for aggravated rape, although that penalty could not be imposed at the time of Defendant's trial. Additionally, a jury was authorized to return a verdict of either guilty, guilty without capital punishment, guilty of attempted aggravated rape, guilty of simple rape, or not

---

[4]Louisiana Revised Statutes 14:27(D)(1) was amended, effective September 12, 1975, to change the penalty to not more than fifty years. 1975 La. Acts No. 132, § 1. In 1995, the legislature again amended La.R.S. 14:27(D)(1) to provide a penalty of not less than ten and not more than fifty years without the benefit of parole, probation, or suspension of sentence. 1995 La. Acts No. 988, § 1.

11

guilty. La.Code Crim.P. art. 814 (1950).[5]  Furthermore, former La.R.S. 15:409

(codified in 1966, effective January 1, 1967, to La.Code Crim.P. art. 817) provided

in pertinent part, "[i]n a capital case the jury may qualify its verdict of guilty with the

addition of the words 'without capital punishment,' in which case the punishment

shall be imprisonment at hard labor for life." In *State v. Batiste,* 371 So.2d 1164

(La.1979)*,* the court addressed the proper sentence for a defendant convicted of

aggravated rape when the penalty of death could not be constitutionally imposed,

explaining in pertinent part:

> We find, however, an error patent in the sentence imposed. At the
> time the offense was committed (1970), death was the statutory penalty
> for rape. The jury was authorized to return a verdict of either guilty,
> guilty without capital punishment, guilty of attempted aggravated rape,
> guilty of simple rape, or not guilty. La.C.Cr.P. art. 814 (1950). The
> defendant was not tried until 1973, however, after the Supreme Court
> had declared unconstitutional the procedure by which the death penalty
> was imposed in Louisiana. *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct.
> 2726, 33 L.Ed.2d 346 (1972). In the defendant's case the jury returned
> a verdict of guilty as charged. As the death penalty could not be
> imposed, the proper sentence is life imprisonment. *State v. Quinn*, 288
> So.2d 605 (La.1974); *State v. Franklin*, 263 La. 344, 268 So.2d 249
> (1972). We note that this will restore to the defendant the possibility of
> parole, probation, suspension or commutation of sentence.

*Id*. at 1165. *See also*, *State v. Craig,* 340 So.2d 191 (La.1976). Consequently, the

proper sentence on each of these sentences was life imprisonment at hard labor.

However, at the time of the commission of these offenses, there was no prohibition

in La.Code Crim.P. arts. 814 or 817 (former La.R.S. 15:409) regarding the benefits

of probation, parole, or suspension of sentence.[6]  Thus, we conclude that the trial

---

[5]Louisiana Code of Criminal Procedure Article 814 was amended, effective July 2, 1973, deleting the responsive verdict of "guilty without capital punishment" to the charge of aggravated rape.  1973 La. Acts No. 126.

[6]Louisiana Code of Criminal Procedure Article 817 was amended, effective July 1972, to allow a jury, in a capital case, to choose to impose a penalty of life imprisonment without the benefit of parole, probation, commutation, or suspension of sentence.  1972 La. Acts No. 502, § 1.

court erred in imposing these sentences without the benefit of probation, parole, or suspension of sentence. Accordingly, Defendant's sentences imposed for the convictions of aggravated rape of R.C. and L.G. are amended to delete the portion of the sentences to be served without benefits. The trial court is instructed to note the amendments in the court minutes.

## ANALYSIS

Defendant contends that the evidence was insufficient to support his convictions of aggravated rape and the conviction of attempted aggravated rape.

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See Graffagnino*, 436 So.2d at 563, *citing State v. Richardson*, 425 So.2d 1228 (La.1983). To obtain a conviction, the elements of the crime must be proven beyond a reasonable doubt.

*State v. Freeman*, 01-997, pp. 2-3 (La.App. 3 Cir. 12/12/01), 801 So.2d 578, 580.

Furthermore:

> In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Johnson*, 00-1552 (La.App. 5 Cir. 3/28/01) 783 So.2d 520, 527, *writ denied*, 01-1190 (La.3/22/02), 811 So.2d 921. The question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. *Id.* The credibility of the witnesses will not be re-weighed on appeal. *Id.*

*State v. Dixon*, 04-1019, p. 12 (La.App. 5 Cir. 3/15/05), 900 So.2d 929, 936.

13

Defendant was convicted of aggravated rape occurring between the years of 1961 and 1971. During that time, La.R.S. 14:42 defined aggravated rape as follows:[7]

> Aggravated rape is a rape committed where the sexual intercourse is deemed to be without the lawful consent of the female because it is committed under any one or more of the following circumstances:
>
> . . . .
>
> (3) Where she is under the age of twelve years. Lack of knowledge of the female's age shall not be a defense.

*State v. Miller*, 111 So.2d 108, 111 (La.1959).

### *Aggravated Rape of A.C.*

Because we have reversed and set aside Defendant's conviction and sentence with regard to A.C., we do not address the merits of Defendant's claim as it relates to the conviction of aggravated rape against A.C.

### *Attempted Aggravated Rape of B.P.*

The victim, B.P., was born on March 8, 1957. She testified that Defendant, her uncle, touched her vagina with his hands and his penis when she was between the ages of four and six years old. In particular, she stated, "I remember him doing things to me that made me feel bad about myself." B.P. testified that her earliest memory of these events occurred while she was riding in a car with Defendant when she was about four or five years old. She was sitting on Defendant's lap while he was driving and that he touched her vagina with his hands. B.P. also testified about an incident that occurred in Defendant's bedroom when she was six or seven years old. B.P. stated that she remembered Defendant putting on a condom, lubricating it with his saliva, and then inserting his penis into her vagina. She remembered Defendant

---

[7]We quote the statute as it existed in 1950. The statute was changed in 1975 by Act 612, which amended and reenacted Title 14, § 42 of the Louisiana Revised Statutes of 1950.

taking the condom off and "seeing white liquid in it after he was done." B.P. testified that during this incident she was standing with her back against Defendant's bedroom wall and that she believed Defendant was also standing.

Next, B.P. testified about an occasion where Defendant penetrated her a second time. She stated that this incident occurred in an old barn behind Defendant's house when she was about five years old. With respect to this particular incident, B.P. testified that Defendant touched her inappropriately and penetrated her. Although she remembered him using a condom, she could not say whether Defendant ejaculated, as she did not remember seeing any white liquid in the condom. She testified that Defendant was standing during the rape. B.P. also stated that she remembered being sore. B.P. testified that she had no recollection of any other incidents of abuse.

On appeal, Defendant argues that B.P.'s testimony is "insufficient to prove beyond a reasonable doubt that the Defendant had the specific intent to penetrate an act of anal or vaginal intercourse" and that she was under the age of twelve at the time of the alleged offense. Defendant contends that if we rely on B.P.'s testimony, it would have been physically impossible for him to have penetrated her. B.P. testified that, during both incidents of rape, Defendant was in the standing position. Thus, Defendant contends that it is impossible for a grown man to have penetrated a five or six-year-old girl while both parties were standing.

Defendant also contends that B.P.'s testimony is unreliable. He points out that B.P.'s testimony is strikingly similar to the testimony of her cousin, R.C. Defendant further notes that "the only evidence of penetration is B.P.'s testimony that she remembers being sore." Based on this observation and B.P.'s testimony that she has

15

"blocked out" most of her memory of any abuse, Defendant contends that B.P.'s testimony about the penetration is unreliable.

These assertions are an attack on the victim's credibility, which is outside the purview of this court. *See Freeman*, 801 So.2d 578; *Dixon*, 900 So.2d 929. The jury in this case returned the responsive verdict of attempted aggravated rape, which is permissible under La.R.S. 14:27(C). This court has stated that "[s]uch a compromise verdict is permissible 'so long as the evidence supports either the verdict given or the original charge.'" *State v. Perkins*, 07-423, p.5 (La.App. 3 Cir. 10/31/07), 968 So.2d 1178, 1182, *writ denied*, 07-2408 (La. 5/9/08), 980 So.2d 688 (quoting *State v. Charles*, 00-1611, p. 5 (La.App. 3 Cir. 5/9/01), 787 So.2d 516, 519, *writ denied,* 01-1554 (La. 4/19/02), 813 So.2d 420).

B.P.'s testimony revealed that when she was six years old, Defendant put on a condom, lubricated it with his saliva, and then inserted his penis into her vagina. B.P. also testified that Defendant penetrated her in an old barn behind Defendant's house when she was five years old and that she remembered being sore afterwards. We conclude that B.P.'s testimony is sufficient to prove the elements of aggravated rape beyond a reasonable doubt.

### ***Aggravated Rape of R.C.***

R.C. testified that she was born on December 17, 1957, and that Defendant is her uncle. R.C. testified about her earliest memories of Defendant, stating that as a young child she visited her uncle on a weekly basis and that he often asked her to help him clean his home. She testified that she went to Defendant's house "[p]robably every weekend." She further testified that Defendant began molesting and raping her when she was four years old.

16

R.C. testified that Defendant would sit her on his lap and go under her dress to touch her private areas. She explained that he would use his hands and his penis to touch her "privates." She further explained that Defendant often rubbed his penis on her vagina. R.C. testified that these events usually took place at Defendant's home but that it also happened in his car. She explained that Defendant would sit her on his lap and allow her to drive his car.

R.C. also testified about the first time Defendant penetrated her, stating:

Q. Can you tell us how old you were and what's your first memory of him doing more than touching?

A. I was four years old.

Q. Okay. And tell us what you remember.

A. Well, we had our little shack, and then we had another little building that was very, very small and it was behind our home. And we put an extra bed out there, and some of the kids occasionally would sleep out there. He took me in there, there was nothing but a bed and refrigerator, and he stood me with my back against the refrigerator and he took his penis and put it on my vagina and pushed and pushed.

And I just remember that it hurt badly, and I just remember that when I pee-peed later or when I went to sit down I was very sore. And I hurt very badly.

Q. Your back is against the refrigerator.

A. Yes, ma'am.

Q. Okay. What position is his body in?

A. He was squatted, he was crouched down, like squatting down.

. . . .

Q. Did you have panties on?

A. Yes, ma'am, I did.

Q. Okay. And were the panties removed?

17

A. No. They were pulled down, but they were not removed.

Q. Okay. And you said then he began to squat down?

A. Yes, ma'am, he did.

Q. And what did he do with you to attempt to penetrate you as you described earlier?

A. He took out a condom and lubricated it, and put a condom on and pushed very hardly.

Q. Did he gain entry into you?

A. Yes, ma'am, he did.

Q. Okay. How much entry --

A. I don't know.

Q. Okay

A. But I know that because of the pain I felt, and as an adult now looking back I know that he did, because I was very sore, and I hurt terribly.

Q. As an adult now looking back on that incident did he ejaculate?

A. Yes, ma'am, he did.

Q. What did you see?

A. I saw white, milky stuff in the condom, and I didn't know what that was at that time, and now I do.

R.C. also testified about another occasion where she was abused by Defendant. R.C. testified that on the weekends, she and several of her siblings would spend the night at Defendant's house, and she remembered Defendant doing things to her during the night. R.C. testified as follows:

Q. Now, when you would go and spend the weekends who would sleep where?

A. There were two beds in the room. One faced -- they ran perpendicular to each other. One faced this way and one faced this way.

18

And [Defendant] would keep the room so dark you couldn't see your hand in front of you.

And . . . because I was young, I don't remember if he had something to coat -- besides the window coverings -- something to coat the actual glass. But you couldn't see a thing. And he would always put me in the one bed that would run parallel with you and the other bed ran parallel with the jury.

Q. Okay. And who would be in the other bed?

A. My siblings.

. . . .

Q. And can you tell us what would happen when you would be in your uncle's bed?

A. Yes, ma'am. He would lay flat on his back and he would put me on top of him, and he would push until he could gain entry, partial entry.

Q. And what were your brothers doing at the time?

A. They were sleeping. They didn't have a clue. It was dark. You couldn't see your hand in front of you.

. . . .

Q. And I need you to explain to the jury when he'd put you on top of him what happened?

A. He'd take his penis and rub it on my vagina, and he would push, and he would ejaculate. And he always used a condom.

On appeal, Defendant attacks R.C.'s testimony by asserting that the memory of a fifty-year-old woman is unreliable as it relates to events that happened when she was four years old. Defendant also contends that it is physically impossible for the rape to have occurred in the manner described by the victim. R.C. testified that her uncle raped her while she was standing with her back against the refrigerator and that he was squatting down. Defendant contends that it is impossible for a grown man to rape a four-year-old girl while only squatting down.

19

Again, these contentions are essentially challenges against the victim's credibility, which is outside the purview of this court. Given that the testimony of the victim alone is sufficient to support a conviction, the jury's decision to believe the victim's testimony was justified. R.C.'s testimony established all of the elements of aggravated rape. R.C. testified that she was between the ages of four and seven when the offenses occurred. She testified that Defendant rubbed his penis against her vagina. R.C. also stated, "[h]e would lay flat on his back and he would put me on top of him, and he would push until he could gain entry, partial entry." Citing *State v. Allen*, 02-593 (La.App. 3 Cir. 11/6/02), 830 So.2d 606, the State points out that even slight penetration of the female genitalia's external features is sufficient proof of the crime of aggravated rape. We conclude that the evidence is sufficient to sustain Defendant's conviction of aggravated rape against R.C.

### *Aggravated Rape of L.G.*

L.G. testified that she was born on March 29, 1962. Defendant was a friend of her family and a frequent visitor of her home when she was a child. L.G. testified that she and her two younger sisters began going to Defendant's home to clean it when she six or seven years old. She testified that Defendant instructed them to dust certain items and would allow them to keep the pennies and nickels they found lying around the house. She further testified that Defendant would gradually try to get them into the bedroom.

L.G. testified that she was "about 8 or 9 years old whenever he really started touching me." She explained that Defendant would fondle her and touch her "private spots." L.G. stated, "[h]e would touch my vagina with his fingers[,] and he'd touch my breasts because, I guess, it turned him on or whatever." L.G. explained that these

20

incidents took place in Defendant's bedroom. L.G. also testified that Defendant penetrated her. When asked if she knew how old she was the first time she was penetrated by Defendant, L.G. testified that she could not remember the exact age because she was being molested by someone else at the same time. She stated that it lasted until she became pregnant when she was thirteen years old.

When asked to describe the first time that she was penetrated by Defendant, L.G. stated, "I just remember him getting on top of me and -- all I can remember is him getting on top of me and putting it in -- putting his penis in my vagina." L.G. further testified that the rapes occurred on the bed in Defendant's bedroom. She also stated that "there was a bathtub up in the corner where he would keep water in a pan for us to be able to wash up afterwards." L.G. stated that "it hurt the first time."

L.G. explained that while she was in the bedroom with Defendant, her sisters were in the front room and the kitchen of Defendant's home. She further explained that after Defendant raped her in the bedroom, the two of them would make the bed so that her sisters would think they had been cleaning the bedroom. L.G. testified that she went to Defendant's home nearly every weekend and that the abuse did not stop until she got pregnant at the age of thirteen. L.G. testified that her mother knew about the abuse but that she still allowed her and her sisters to go to Defendant's house. She testified that she did not tell her father because he was a "high tempered man."

L.G. testified that, after the first incident of rape, she had sexual intercourse with Defendant about three or four times a month, as she went to his house almost every weekend. When asked about whether she ever confronted Defendant, L.G. testified:

A.    Not really, not til -- let's see, I'm gonna say probably eight
        months to a year ago. It was just last year for sure. I have a 31 year

21

[old] daughter and at the time I didn't know if it [sic] was his or if her biological father was dead.

So I went up to [Defendant], and I asked him if he would do a DNA. He said yes. And I said, well, -- he said it would be countless to do it, no sense in doing it. And I didn't know why he said that, but I mean --

. . . .

A.    He -- I asked him if he'd do a DNA and he said yes. And I said, "Well, what would you do if it shows to be, if she shows to be your daughter?"

He said, "I'd take care of y'all." Thank God she doesn't have to walk around and say that that's her daddy, but he's not. But he did say he would take care of us if it showed him to be the father.

L.G. testified that she was positive that she was younger than twelve years old when Defendant initially had sexual intercourse with her. She also stated that she never mentioned Defendant's name to anyone after learning she was pregnant but that she once admitted to her father that another man had been raping her.

On appeal, Defendant contends that the State presented no evidence to corroborate L.G.'s testimony that she had a baby at the age of fourteen. Defendant also points out that no evidence was presented to corroborate L.G.'s testimony regarding her discussion with Defendant about having a DNA test performed to determine the paternity of her daughter. Defendant contends that the "only evidence in the record is the results of a DNA test performed by the State pursuant to a motion to produce physical evidence."

Defendant only challenges the credibility of the L.G.'s testimony; he fails to point to any irreconcilable conflict or inconsistency within her testimony. Further, L.G. testified that Defendant began raping her when she was eight or nine years old. She testified that he got on top of her and put his penis in her vagina. She also stated

22

that it hurt the first time.  Given that the victim's testimony alone is sufficient to support a conviction, we find that L.G.'s testimony establishes all the required elements of aggravated rape.

**DECREE**

Defendant's conviction and sentence of aggravated rape against A.C. is reversed and set aside, and the matter is remanded to the trial court for further proceedings consistent with this opinion.  Defendant's conviction of attempted aggravated rape against B.P. and the convictions of aggravated rape against R.C. and L.G. are affirmed.  However, Defendant's sentence imposed for the conviction of attempted aggravated rape of B.P. is vacated, and the matter is remanded to the trial court for resentencing.  Furthermore, Defendant's sentences imposed for the convictions of the aggravated rape of R.C. and L.G. are amended, deleting the provision that the sentences are to be served without the benefit of probation, parole, or suspension of sentence.  The trial court is instructed to note the amendment in the court minutes.

**AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART; AND REMANDED WITH INSTRUCTIONS**.