BONIN, J.,
concurs with additional reasons.
hi respectfully concur in ordering new but separate trials of the two defendants. *320 I write separately to highlight additional considerations with respect to each reversal.
I
With respect to Lionel Serigne, I elaborate on two points in the majority opinion: first, that the error identified regarding the jury waiver is an error patent, and, second, that the prosecution’s reliance upon Third Circuit jurisprudence is misplaced. •
A
First, it is important to establish that, because this specific issue constitutes an error patent, it falls within the scope of our appellate review, notwithstanding Mr. Serigne’s failure to include it in his brief. See State v. Goodley, 398 So.2d 1068, 1069 (La. 1981) (finding error patent where only ten out of twelve jurors rendered verdict in capital charge); State v. Rich, 368 So.2d 1083, 1084 (La.1979) (finding error patent in failure to comply with procedural rules for capital crimes, even though defendant could not actually be put to death); State v. Hunter, 306 So.2d 710, 711 (La.1975) (noting error patent in failure to sequester jury as required by capital procedural rules); State v. Breaux, 08-1061, pp. 9-10 (La.App. 3 Cir. | ,.4/1/09), 6 So.3d 982, 989 (finding reversible error patent in absence of unanimous verdict for crime classified as capital).
An error patent is one “discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.” See La.C.Cr.P. art. 920(2). For purposes of an error patent review, the record in a criminal case “includes the caption, the statement of time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the mentioning of the impanelling of the jury, the verdict, and the judgment_” State v. Oliveaux, 312 So.2d 337, 339 (La.1975); State v. Jones, 544 So.2d 1294, 1296 (La. App. 4th Cir.1989).
B
The prosecution acknowledges that it charged Mr. Serigne with an offense that was classified as capital for the first year alleged in the indictment. Without citing any supporting authority, however, and contradictory to established jurisprudence, the prosecution claims that the “State was afforded the discretion to prosecute the aggravated rape against Lionel Serigne as either a capital or non-capital matter.” The prosecution rests this argument on the recent Third' Circuit decision in State v. Hypolite, 13-1365 (La.App. 3 Cir. 5/14/14), 139 So.3d 687.[1]
The defendant in Hypolite was charged with aggravated rape of a victim under the age of thirteen. The rape occurred in 2009. Prior to 1997, the statute provided that a person convicted of aggravated rape “shall be punished by death or life imprisonment ... in accordance with the determination of the jury.” In 1997, the Louisiana- legislature amended La. R.S. 14:42 to alter the offense of aggravated rape of a victim under the age of thirteen. Importantly, 1 the statute was also amended in 1997 to allow the district attorney to choose between seeking a capital Rverdict or a non-capital verdict in prosecutions for aggravated rape of a victim under thirteen. *321 Post-amendment, the pertinent section of the statute read, and still reads, as follows:
(2) However, if the victim was under the age of thirteen years, as provided by Paragraph (A)(4) of this Section:
(a) And if the district attorney seeks a capital verdict, the offender shall be punished by death or life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, in accordance with the determination of the jury. The provisions of Code of Criminal Procedure Art. 782 relative to cases in which punishment may be capital shall apply.
(b) And if the district attorney does not seek a capital verdict, the offender shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, The provisions of Code of Criminal Procedure Art. 782 relative to cases in which punishment is necessarily confinement at hard labor shall apply.
Thus, if the prosecution elects to pursue a capital verdict, even if the jury ultimately sentences the offender to life imprisonment, it must also comply with the procedural requirements for capital cases pursuant to La.C.Cr.P. art. 782 because the punishment “may be capital.” See also La. Const, art. I, § 17. But, however, if the prosecution chooses a non-capital verdict, where the only punishment is life imprisonment, then capital procedural rules do not apply.
Notably, the offense in Hypolite occurred after the 1997 amendments, and the prosecution was pursued as a non-capital offense, as allowed by the statute.[2] The offenses in Mr. Serigne’s case occurred well before the 1997 amendments, where the statute did not give the district attorney any option to prosecute an aggravated rape case as capital or non-capital. In 1976, and the majority of 1977, the punishment for aggravated rape was a mandatory death sentence. Interestingly, the Third Circuit has rejected the very argument which the prosecution now raises. 14See State v. Self, 98-39 (La.App. 3 Cir. 8/19/98), 719 So.2d 100. The court in Self noted that, while the aggravated rape statute had been amended in 1997 in an apparent effort to legislatively overrule Goodley, it was not in effect at the time the offenses were committed and therefore the amendment was not applicable. See id. at pp. 6-7, 719 So.2d at 103.
I also note that the Third Circuit reached a different conclusion when faced with facts similar to Lionel Serigne’s case. See Breaux, 08-1061, pp. 9-10, 6 So.3d 982, 989. The defendant in Breaux was charged with committing aggravated rape between May 1, 1977 and December 31, 1980. The court found that because some of the allegations subjected the defendant to capital punishment, he was required to be tried in accordance with capital procedural rules. The prosecution appears to have overlooked this case.
The prosecution also argues that because the death penalty could not be legally carried out in light of Kennedy v. Louisiana, 564 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008), which held that the Eighth Amendment prohibits the death penalty for the rape of a child where the crime did not result, and was not intended to result, in death of the victim. As previously discussed, however, jurisprudence from our state supreme court has already rejected this argument. See Williams; Rich; Hunter; Holmes; Flood. The *322 prosecution’s arguments are not persuasive.
II
I turn now to address the result with respect to William Serigne’s appeal.
•A
From our examination of D.A.’s testimony, it is clear that her trial testimony was consistent with her grand jury testimony of April 7, 2010 and of May-30, 2012 with respect to the non-participation of the brothers together in any act of intercourse. But’ during our examination of the grand jury transcripts we | ^discovered an inconsistency in her 2010 grand jury testimony from that of her trial testimony.
The discrepancy pertains to an essential element of the offense for which Mr. Se-rigne was charged (aggravated rape) and for which he was adjudged guilty (forcible rape). At.trial D.A. testified that.he sat her on top of his lap. with her “panties down” and was putting his penis into her vagina. '-When questioned how it felt to have his penis in her vagina,- she replied that it hurt. She testified that this-was the only occasion on which they had intercourse and that she was certain it occurred between 1981 and 1983. During her 2010 grand jury testimony, however, she testified that “William would always touch. He would also ask me to perform oral sex but no intercourse.” (emphasis added). “Oral intercourse,” however, as we note, was not added as an element of the applicable rape statutes (La. R.S. 14:41,14:42, and 14:42.1) until 2001. And, of course, a conviction of William Serigne for rape (aggravated or forcible) based upon proof of oral intercourse would violate the federal and state constitutional prohibitions on ex' post facto laws. See Article I, § 10; La. Const, art. I, § 23; Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990); State ex rel. Olivieri v. State, 00-0172, 00-1767 (La.2/21/01), 779 So.2d 735. See also State v. Wallace, 13-0149 (La.App. 4 Cir. 6/25/14), 143 So.3d 1275 (reversible error to instruct jury on. oral intercourse when it did not exist, in the aggravated rape statute at the time of the offense).
B
“[T]he suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.” Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Importantly for our purposes, the Brady rule encompasses not only exculpatory evidence but impeachment evidence where the credibility or reliability of the'testifying witness may be determinative of guilt or |fiinnoeence. See U.S. v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); Giglio v. United States, 405 U.S. 150, 153-54, 92 S.Ct. 763, 31. L.Ed.2d 104 (1972) (clarifying that the rule stated in Brady, applies to evidence undermining witness credibility); State v. Sparks, 88-0017, p. 67 (La.5/11/11), 68 So.3d 435, 485. Here, of course, it bears emphasis, this prior inconsistent statement is relevant to the existence of an essential element of the offense and thus necessarily could bear upon the guilt or innocence of William Serigne.' And, according to the testimony of D.A. herself, she was the- sole witness to her rape by Mr. Serigne.
That the Brady material is contained in grand jury testimony is of no moment. The statutory provisions regarding the secrecy of grand jury proceedings and testimony by their own explicit terms yield to Brady. See La.C.Cr.P. art. 434.1 B (“The district attorney shall also disclose to the defendant material evidence favorable to the defendant that was presented to the *323 grand jury.”); see also State v. Peters, 406 So.2d 189 (La.1981) (prosecutor compelled to disclose witness’s grand jury testimony to defendant because it contained material exculpatory evidence under Brady).
' And, similarly, it is of no moment that it was an assistant district attorney[3] who questioned D.A. before the 2010 grand jury, a different assistant attorney general[4] who questioned her before the 2012 grand jury, and still another assistant attorney general who questioned her at the trial. The state is not absolved of its duties under Brady simply because an individual prosecutor' does not possess or have knowledge of the evidence. See Giglio, 405 U.S. at 154, 92 S.Ct. 763; Kyles v. Whitley, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (“[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government’s behalf in the case, including the police.”). Moreover, the prosecution’s duty to disclose remains I gin force even when no specific or general request for the evidence has been made by the defense. See Strickler v. Greene, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (citing U.S. v. Agurs, 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). And, beyond their duties under the constitution, prosecutors are bound by the Louisiana Rules of Professional Conduct to disclose material evidence favorable to the defense. See Rule 3.8(d), Rules of Professional Conduct, (“.The prosecutor in a criminal case shall ... make timely disclosure to the defense of all evidence, or information known to the prosecutor that the prosecutor knows, or reasonably should know, either tends to negate the guilt of the accused or -mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor.... ”).[5] Thus, a prudent prosecutor errs on the side of .disclosure when confronted with possible Brady evidence. See Kyles, 514 U.S. at 439-40,. 115 S.Ct. 1555 (“This means, naturally, that a prosecutor anxious about tacking too close to the wind will • disclose a favorable piece of evidence.... The prudence of the careful prosecutor should not therefore be discouraged.”).
We, regrettably, have no indication whatsoever that the prosecutor has made any disclosure to Mr. Serigne about the inconsistencies between D.A.’s grand jury and trial testimonies.
C
It is true that the mere possibility that a piece of undisclosed evidence might have helped the defénse or might have affected the outcome of the trial, does not establish “materiality” under the Fourteenth Amendment. See Agurs, 427 Ú.S. at 109-10, 96 S.Ct. 2392. Here, there is no doubt that the undisclosed evidence is material .and a new trial is required. See Giglio, 405 U.S. at 154, 92 S.Ct. 763.
| sWilliam Serigne need not show that.it is more likely than not that he would have been acquitted had the evidence of D.A.’s grand jury testimony b,e admitted. See *324 Smith v. Cain, 565 U.S. -, -, 132 5.Ct. 627, 630, 181 L.Ed.2d 571 (2012). He need only show that this “new” evidence is sufficient to “undermine confidence” in the judgment. Id. See also Wearry v. Cain, 577 U.S. -,-, 136 S.Ct. 1002, 1006, 194 L.Ed.2d 78 (2016) (per curiam).[6]
I am satisfied that the trial judge in this case should have reviewed the grand jury transcripts in camera for the purposes of determining whether disclosure of favorable evidence was required. See State v. Higgins, 03-1980, pp. 35-36 (La.4/1/05), 898 So.2d 1219, 1241. And I am convinced that had he reviewed D.A.’s grand jury testimony, he would have authorized or directed disclosure of those portions of her testimony, repeated here. Id. The remedy for a material Brady violation is reversal of the conviction and a new trial. See State v. Bright, 02-2793, 03-2796 (La.5/25/04), 875 So.2d 37; State v. Kemp, 00-2228 (La.10/15/02), 828 So.2d 540 (per curiam); State v. Cousin, 96-2973 (La.4/14/98), 710 So.2d 1065.
LANDRIEU, J., dissents and assigns reasons.

. Hypolite cites a First Circuit case in support of its conclusion that the addition of a "hybrid" statute in 1997 gave the prosecution the discretion to choose whether to capitalize a case or not, and therefore capital procedural rules did not apply if the state did not pursue a capital verdict. See State v. Mizell, 05-2516, p. 7 (La.App. 1 Cir. 6/9/06), 938 So.2d 712, 716.

. The Third Circuit noted that the prosecution had failed to state explicitly whether it was pursuing a capital or non-capital verdict, but the court found that all the circumstances indicated it was pursuing a non-capital verdict.

. For reasons not apparent from the record, the district attorney recused himself between indictments.

. We understand that this assistant attorney general died before the trial.

. The rule, in at least one aspect, imposes a more onerous burden thán Brady requires in light of its requirement that the prosecutor not only disclose exculpatory evidence, but also evidence that tends to mitigate the offense. See Kyles, 514 U.S. at 437, 115 S.Ct. 1555 (discussing ABA Model Rule of Professional Conduct 3.8(d), which sets forth the same standards as Louisiana Rule 3.8(d)).

. In colloquially referring to this concealed evidence as "new,” I do not overlook an important distinction: "the fact that such evidence was available to the prosecutor and not submitted to the defense places it in a different category than if it had simply been discovered from a neutral source after trial” as is the usual case with a motion for new trial based on newly discovered evidence. Agurs, 427 U.S. at 111, 96 S.Ct. 2392.