TRAYLOR, Justice.
11 These consolidated matters arise from the defendants’ separate constitutional challenges to Article 782 of the Louisiana Code of Criminal Procedure, a legislative enactment which enumerates the number of jurors who must concur to reach a verdict in a felony case in which the punishment is necessarily confinement at hard labor. The cases are before us on direct appeal pursuant to Article V, Section 5(D)(1) [1] of the Louisiana Constitution, as the district court judge declared in both cases that Article 782 violated the United *739 States Constitution. After reviewing the constitutional provisions and case law of this State and of the United States, we find that the district court erred in finding Article 782 unconstitutional. Accordingly, we reverse the judgments of the district court, and remand these matters to the district court for further proceedings consistent with the views expressed herein.
| ¿FACTS and PROCEDURAL HISTORY
Defendants Shannon McBride Bertrand and Wilford Frederick Chretien, Jr., were each indicted, at separate times and for separate offenses, with felonies punishable by confinement at hard labor.[2] On the same day, May 19, 2008, the defendants’ attorneys filed motions in district court to declare Article 782 unconstitutional. The trial judge granted both motions that same day, stating that the statute violated the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. The State appealed both decisions directly to this Court, and asked that the cases be consolidated. This Court consolidated the two cases for oral argument and opinion on November 12, 2008.
DISCUSSION
This Court recently discussed the procedure by which a party may challenge a statute’s constitutionality:
It is well-settled that a constitutional challenge may not be considered by an appellate court unless it was properly pleaded and raised in the trial court below. Although this court generally possesses the power and authority to decide the constitutionality of the provisions challenged in a defendant’s motion to quash, it is not required to decide a constitutional issue unless the procedural posture demands that it do so.
[[Image here]]
Moreover, this Court has consistently held that legislative enactments are presumed valid and then.’ constitutionality should be upheld when possible. Accordingly, as a result of this presumption, if a party wishes to challenge the constitutionality of a statute, the party must do so properly.
While there is no single procedure for attacking the constitutionality of a statute, it has long been held that the unconstitutionally of a statute must be ' specially pleaded and the grounds for the claim particularized.
| ¿This Court has expressed the challenger’s burden as a three step analysis. First, a party must raise the unconstitutionality in the trial court; second, the unconstitutionality of a statute must be specially pleaded; and third, the grounds outlining the basis of uneonsti-tutionality must be particularized. The purpose of these procedural rules is to afford interested parties sufficient time to brief and prepare arguments defending the constitutionality of the challenged statute. The opportunity to fully brief and argue the constitutional issues provides the trial court with thoughtful and complete arguments relating to the issue of constitutionality and furnishes reviewing courts with an adequate record upon which to consider the constitutionality of the statute.
The final step of the analysis articulated above requires that the grounds outlin *740 ing the basis of the unconstitutionality be particularized. This Court has thoroughly considered the standard for particularizing the constitutional grounds. The purpose of particularizing the constitutional grounds is so that the adjudicating court can analyze and interpret the language of the constitutional provision specified by the challenger. This basic principle dictates that the party challenging the constitutionality of a statute must cite to the specific provisions of the constitution which prohibits the action.
In addition to the three step analysis for challenging the constitutionality of a statute, the specific plea of unconstitutionality and the grounds therefor must be raised in a pleading.
Thus, in light of the foregoing jurisprudential rules, in order to properly con-fect a constitutional challenge, a party must raise the constitutional issue in the trial court by raising the unconstitutionality and the grounds outlining the basis of the alleged unconstitutionality in a pleading
[[Image here]]
Raising the constitutional issue in a motion has been deemed sufficient to satisfy the purpose of the three step analysis required to properly assert a constitutional challenge. Moreover, we recently recognized that a motion raising the constitutionality and the grounds therefor are sufficient to satisfy the three step analysis for raising a constitutional challenge.
[[Image here]]
The final step of the analysis is that the party challenging the constitutionality of a statute particularize the grounds outlining the basis of the unconstitutionality-
[[Image here]]
Although the issue of raising constitutional grounds npt particularized in the trial court generally arises under circumstances in which a party raises a new or additional constitutional ground before an appellate court, this Court has consistently found that the purpose of the three step analysis for challenging the constitutionality of a statute is to give the |4parties an opportunity to brief and argue the constitutional grounds and to prepare an adequate record for review. Clearly, these purposes are not satisfied if the trial court is permitted to rule on grounds not properly raised by the party challenging the constitutionality of a statute. Further, we note that this situation is similar to those instances in which a trial court sua sponte declares a statute unconstitutional when its unconstitutionality has not been placed at issue by one of the parties in a pleading. A judge’s sua sponte declaration of unconstitutionality is a derogation of the strong presumption of constitutionality accorded legislative enactments.
State v. Hatton, 07-2377 (La.7/1/08), 985 So.2d 709, 718-20 (citations omitted).
Here, each defendant raised the issue of the unconstitutionality of Article 782 in the trial court by means of motions to declare the statute unconstitutional. Further, in the motions, each defendant specified that the statute violated the Fifth, Sixth, and Fourteenth Amendments. The defendants, while arguing a Sixth and Fourteenth Amendment violation, neither argued a Fifth Amendment violation in the trial court, nor briefed a Fifth Amendment violation here. As such, defendants have waived any discussion as to whether Article 782 violates the Fifth Amendment.
*741 The trial court’s reasoning for declaring the statute unconstitutional is rather insubstantial. In fact, other than to state that Article 782 violated the Fifth, Sixth, and Fourteenth Amendments, the court’s reasoning is nonexistent in the record of these two cases. The court did state, however, that the basis for its ruling was the same as for its ruling in the case of State v. Robert Wilkins,[3] filed in this Court as docket number 2008-KA-0887. This Court was able to review those reasons, which were filed here with the Wilkins record. Those reasons consisted of a rambling diatribe with no discernable legal analysis, and were only slightly more expansive than those contained in the record in these consolidated cases.
In its ruling in Wilkins, the trial court first attacked the United States Supreme 1BCourt’s decision in Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), then discussed equal protection, and finished by declaring that Article 782 violated the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. The court notably failed to discuss this Court’s prior and controlling jurisprudence which has consistently upheld the constitutionality of Article 782 against precisely the same constitutional challenges raised here.
As neither defendant specified, briefed, or argued that the statute violated the Constitution’s guarantee of equal protection under the law, any reliance by the trial court in its ruling on such grounds was based on constitutional grounds not properly raised, and was, therefore, improper.
The statute in question, Article 782 of the Louisiana Code of Criminal Procedure, provides as follows:
Art. 782. Number of jurors composing jury; number which must concur; waiver
A. Cases in which punishment may be capital shall be tried by a jury of twelve jurors, all of whom must concur to render a verdict. Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. Cases in which the punishment may be confinement at hard labor shall be tried by a jury composed of six jurors, all of whom must concur to render a verdict.
B. Trial by jury may be knowingly and intelligently waived by the defendant except in capital cases.
In Apodaca, the United States Supreme Court examined an Oregon statute similar to Article 782, in that the Oregon statute did not require unanimous jury verdicts in noncapital cases. In a plurality decision, the Court determined that the United States Constitution did not mandate unanimous jury verdicts in state court felony criminal trials, with four Justices holding that the Sixth Amendment guarantee of a jury trial, made applicable to the States by the Fourteenth Amendment, does not | ¿require that a jury’s vote be unanimous. Justice Powell concurred in the judgment of the Court for reasons different than those expressed by the author of the opinion. Four Justices, disagreed, finding that the Sixth Amendment guarantee of a jury trial was made applicable to the States by the Fourteenth Amendment, and does require a unanimous jury.
The defendants argue here that, because no single rationale for the non-unanimity position prevailed in Apodaca and in light of more recent Supreme Court Sixth *742 Amendment jurisprudence, the validity of .the Apodaca decision is questionable. Defendants further argue that the Apodaca decision is diametrically opposed to the approach taken by the U.S. Supreme Court in recent Sixth Amendment cases involving Federal criminal jury trials, in that, rather than looking at the text of the Amendment and the Framers’ understanding of the right at the time of adoption, the decision relied on the function served by the jury in contemporary society. Finally, defendants argue that the use of non-unanimous verdicts have an insidious racial component, allow minority viewpoints to be ignored, and is likely to chill participation by the precise groups whose exclusion the Constitution has proscribed.
This Court has previously discussed and affirmed the constitutionality of Article 782 on at least three occasions. In State v. Jones, 381 So.2d 416 (La.1980), we ruled that Article 782 did not violate the Sixth and Fourteenth Amendments. Later, in State v. Simmons, 414 So.2d 705 (La.1982), we found that Article 782 did not violate either the Fifth or Fourteenth Amendments. Finally, in State v. Edwards, 420 So.2d 663 (La.1982), we again affirmed the statute’s constitutionality.
Despite defendants’ arguments to the contrary, the case law of the United States Supreme Court also supports the validity of these decisions. Although the Apodaca decision was, indeed, a plurality decision rather than a majority one, the 17Court has cited or discussed the opinion not less than sixteen times since its issuance. On each of these occasions, it is apparent that the Court considered that Apodaca’s holding as to non-unanimous jury verdicts represents well-settled law. For instance, in Burch v. Louisiana, 441 U.S. 130, 99 S.Ct. 1623, 1626-27, 60 L.Ed.2d 96 (1979), the Court matter-of-factly recognized the reasoning behind the Apodaca holding as support for its overturning of a jury conviction by a 5-1 margin. Further, in Holland v. Illinois, 493 U.S. 474, 110 S.Ct. 803, 823, 107 L.Ed.2d 905 (1990) (Stevens, J., dissenting), Justice Stevens stated that it was the fair cross section principle underlying the Sixth Amendment’s right to a jury trial that permitted non-unanimous juries. Justice Scalia, a noted originalist on the Court, explicitly rejected a unanimity requirement in his dissent McKoy v. North Carolina, 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369(1990), saying:
Of course the Court’s holding today— and its underlying thesis that each individual juror must be empowered to “give effect” to his own view — invalidates not just a requirement of unanimity for the defendant to benefit from a mitigating factor, but a requirement for any number of jurors more than one. This it is also in tension with Leland v. Oregon (citation omitted), which upheld, in a capital case, a requirement that the defense of insanity be proved (beyond a reasonable doubt) to the satisfaction of at least 10 of the 12-member jury. Even with respect to proof of the substantive offense, as opposed to an affirmative defense, we have approved verdicts by less than a unanimous jury. See Apodaca v. Oregon (citation omitted) (upholding state statute providing for conviction by a 10-to-2 vote).
McKoy, 110 S.Ct. at 1246-47, (Scalia, J., dissenting) (emphasis in original). Likewise, in United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310, 2314, 132 L.Ed.2d 444 (1995), the Court, in a unanimous opinion, recognized the reasoning behind the Apodaca decision. Finally, Justice Souter, dissenting in Rita v. United States, 551 U.S. 338, 127 S.Ct. 2456, 2484, 168 L.Ed.2d 203, (2007) (Souter, J., dissenting), again recognized the Apodaca holding as well-settled law.
*743 We note that defendants last argument — that the use of non-unanimous -verdicts have an insidious racial component, allow minority viewpoints to be ignored, and is | sIikely to chill participation by the precise groups whose exclusion the Constitution has proscribed-was also argued in Apodaca. With regard to this assignment of error, a majority, rather than a plurality, of the Court determined that the argument was without merit.
CONCLUSION
Due to this Court’s prior determinations that Article 782 withstands constitutional scrutiny, and because we are not presumptuous enough to suppose, upon mere speculation, that the United States Supreme Court’s still valid determination that non-unanimous 12 person jury verdicts are constitutional may someday be overturned, we find that the trial court erred in ruling that Article 782 violated the Fifth, Sixth, and Fourteenth Amendments. With respect to that ruling, it should go without saying that a trial judge is not at liberty to ignore the controlling jurisprudence of superior courts.
DECREE
For the foregoing reasons, we reverse the district court’s ruling on the constitutionality of Article 782 and remand these consolidated cases to the district court for further proceedings consistent with the views expressed in this opinion.
REVERSED AND REMANDED.
WEIMER, J. concurs with reasons.

. Louisiana Constitution, Article V, Section 5(D) provides: In addition to other appeals provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional or (2) the defendant has been convicted of a capital offense and a penalty of death actually has been imposed.

. Bertrand is charged with one count of second degree murder, a violation of R.S. 14:30.1. Chretien is charged with one count of second degree murder, one count of armed robbery, and one count of attempted second degree murder, violations of R.S. 14:30.1, 14:64.3 and 14:27/14:30.1. The punishment for each of these crimes is necessarily confinement at hard labor.

. That case, likewise a second degree murder matter, was dismissed on July 10, 2008 as moot when the defendant opted for a bench trial.