McClendon, j.
^Defendant, James A. Bishop, was charged by indictment with four counts of first degree murder, violations of LSA-R.S. 14:30. Kevin W. Kaigler and Frank N. Knight were charged in the same indictment with the same offenses. Defendant pled not guilty. Subsequently, the indictment was amended to reduce the charges against Knight to accessory after the fact to first degree murder, a violation of LSA-R.S. 14:25 and 14:30, and to add a charge of distribution of cocaine, a violation of LSA-R.S. 40:967, and he pled guilty to those charges. The state elected not to seek the death penalty against defendant and Kaigler in the instant case. After a joint trial by jury, at which time they were represented by separate counsel, defendant and Kaigler were each found guilty as charged on all counts. The trial court subsequently sentenced them each to a term of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence, on each of their four convictions of first degree murder, to be served concurrently. Defendant now appeals, arguing in two assignments of error that the jury verdicts were invalid because they were not unanimous and that he received ineffective assistance of counsel.[1] For the following reasons, we affirm defendant’s convictions and sentences.
FACTS
On the evening of June 27, 2006, J.A., who was nine years old at the time, and her mother, Victoria, were living in a trailer with Victoria’s sister, Roxanne Agoglia, in Slidell, Louisiana. Roxanne’s flaneé, Eric Perreand, her sixteen-year-old daughter, Erica Agoglia, and Andrew Perreand, Eric’s fifteen-year-old nephew, were also living in the trailer. At that time, Roxanne was involved both in selling and using illegal drugs. In fact, all of the trailer’s occupants, with the exception of J.A., were using illegal drugs.
At approximately 8:15 to 8:30 p.m., J.A. and Andrew were in the living room watching television when there was a knock on the door. Andrew opened | sthe door and admitted two black men, who entered and sat down. Shortly thereafter, J.A. accompanied her mother to the bathroom located at the rear of the trailer off of Roxanne and Eric’s bedroom. The plan was for J.A. and her mother to take a bath, so that J.A. could accompany Victoria to her evening job at a gas station/convenience store. While they were in the bathtub together, with the water running, *1200 J.A. heard gunshots. After J.A. brought this to her mother’s attention, they both heard additional gunshots. Victoria turned off the water and hurriedly got herself and J.A. out of the bathtub. After waiting for a period of time without hearing anything, Victoria cracked the bathroom door open and saw Eric slumped on the bed. She removed the cell phone from his pocket, returned to the bathroom, and called 911.
When the police arrived, they discovered all four of the remaining occupants in the trailer dead. There were no signs of a struggle having occurred. Erica was found on the couch in the living room with a single gunshot wound to the head. Andrew was lying nearby on the floor with two gunshot wounds — one to the chest and the other to the head. The bodies of Eric and Roxanne were found in their bedroom. Eric was slumped face down on the bed, with one gunshot wound to his jaw and another to the back of his neck. Next to him was an open tin container that appeared to be empty, except for a few coins. Roxanne was lying on the floor next to a freestanding safe, with a single gunshot wound to her head. There was a key inserted in the lock of the safe. Further, the top of the tin container and a few scattered coins were on the floor near her body. Subsequent testing established that all the bullets were fired from the same gun.
At trial, Knight testified on behalf of the state pursuant to a plea agreement with the state.[2] According to Knight’s testimony, on the evening of |4June 27, 2006, he and Kaigler were with defendant at the latter’s FEMA trailer in Slidell. According to Knight, they all knew each other from the streets, and associated with one another. At approximately 7:00 to 8:00 p.m., the three men proceeded in defendant’s vehicle to Roxanne’s FEMA trailer, in order to collect on a drug debt she allegedly owed Bishop. As they left defendant’s trailer, Knight saw a revolver in the waistband of defendant’s pants. On the drive to Roxanne’s trailer, defendant stated that, if he failed to collect the money, “he would kill the ... [bjitch.” Once at Roxanne’s trailer park, they parked the car behind a trailer. Knight testified he remained in the car, while defendant and Kaigler walked off, cutting in between trailers. A few minutes later, Knight heard four to six gunshots, and defendant and Kaigler ran back to the car. At that time, Knight again saw a gun in defendant’s waistband. The three men then drove to a FEMA trailer in Waveland, Mississippi, where they remained for several hours before returning to Louisiana. At defendant’s suggestion, it was agreed that they should say they had been in Mississippi, if questioned by the police.
NON-UNANIMOUS VERDICTS
In his first assignment of error, defendant contends that the jury verdicts in this case were invalid under the federal and state constitutions, as well as Louisiana law, because they were non-unanimous. A polling of the jurors indicated *1201 that defendant was convicted on each count by a vote of eleven to one.
Louisiana Constitution Article I, § 17(A) provides, in pertinent part, that:
A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict.
Louisiana Code of Criminal Procedure article 782 A provides as follows:
Cases in which punishment may be capital shall be tried by a jury of twelve jurors, all of whom must concur to render a verdict. Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom |smust concur to render a verdict. Cases in which the punishment may be confinement at hard labor shall be tried by a jury composed of six jurors, all of whom must concur to render a verdict.
In the instant case, defendant was tried pursuant to LSA-R.S. 14:80 C, which was amended by 2007 La. Acts No. 125, § 1, effective August 15, 2007, to provide as follows:
(1) If the district attorney seeks a capital verdict, the offender shall be punished by death or life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, in accordance with the determination of the jury. The provisions of C.Cr.P. Art[.] 782 relative to cases in which punishment may be capital shall apply.
(2) If the district attorney does not seek a capital verdict, the offender shall be punished by life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The provisions of C.Cr.P. Art[.] 782 relative to cases in which punishment is necessarily confinement at hard labor shall apply. (Emphasis added.)
Prior to its amendment in 2007, LSA-R.S. 14:30 C merely provided that the penalty for first degree murder was “death or life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence in accordance with the determination of the jury.” No reference was made to Article 782, and the district attorney was not given the option of seeking a non-capital verdict, which option allows a verdict to be rendered upon the concurrence of ten of twelve jurors under Article 782 A. Hence, if LSA-R.S. 14:80 C(2), as amended by Act 125, is applicable in this case, the non-unanimous verdicts rendered by the jury were proper under Article 782 A, since the state did not seek capital verdicts herein.
The amendment to LSA-R.S. 14:30 C became effective after the instant offenses were committed, but prior to defendant’s indictment and trial. Defendant contends there is no basis for retroactively applying the amendment to the instant case. This issue was raised in the trial court by a motion for new trial filed by defendant, which the trial court denied on the basis that the amendment to LSA-R.S. 14:30 C was procedural in nature and, therefore, | firetroactive to the instant matter. Appellate courts may review the grant or denial of a motion for new trial only for errors of law. See LSA-C.Cr.P. art. 858.
In State v. Goodley, 398 So.2d 1068, 1070-71 (La.1981), the supreme court held that a unanimous verdict was required to convict a defendant charged with a capital offense, even when the state stipulated that it would not seek the death penalty. In reaching this decision, the Supreme Court stated:
*1202 The Legislature, in enacting the controlling provision herein, relied on the severity of the punishment provided for a crime as the basis for its classification scheme in providing the number of jurors which must compose a jury and the number of jurors which must concur to render a verdict. As stated above, La. Const, of 1974 Art. I, § 17 and C.Cr.P. art. 782 provide in pertinent part:
“A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict.” Thus, the Legislature determined that for crimes that were so serious as to validly carry the death penalty, certain special procedural rules were additionally required, among which was the requirement of a unanimous jury to render a verdict. This determination is not based on an after the fact examination of what crime the defendant may eventually be convicted of, nor is it based on an after the fact examination of what sentence he receives. Rather, the scheme is based on a determination by the Legislature that certain crimes are so serious that they require more strict procedural safeguards than other less serious crimes. It was determined that in charged capital offenses a unanimous verdict for conviction, not just sentencing, is necessary and there is no attendant provision giving the state the authority to alter that scheme on its own motion by simply stipulating that the death penalty will not be sought in a certain case.
Goodley, 398 So.2d at 1070-71. (Emphasis added.)
As noted by the supreme court, at the time that Goodley was decided, no authority existed for the state to alter the legislative scheme established with regard to capital cases. However, by the 2007 amendment to LSA-R.S. 14:30 C(2), the legislature created a hybrid capital/non-capital statute that granted authority to the state to designate a case as non-capital by opting to forego the possibility of a death penalty. Therefore, since LSA-R.S. 14:30 C(2), as amended, created the “attendant provision” referred to in Goodley that granted discretion to the state to prosecute first degree murder as a non-capital 17offense, unanimous verdicts would not be required herein if the amended statute can be applied retroactively to this case.
In State v. Washington, 02-2196, pp. 2-3 (La.9/13/02), 830 So.2d 288, 290 (per curiam), the Louisiana Supreme Court delineated the two-fold inquiry necessary to determine whether a law should be applied retroactively as follows:
First, it must be ascertained whether the enactment expresses legislative intent regarding retrospective or prospective application. If such intent is expressed, the inquiry ends.... [T]he second step is to classify the enactment as either substantive, procedural or interpretive.
Substantive laws are laws that impose new duties, obligations or responsibilities upon parties, or laws that establish new rules, rights and duties or change existing ones. Interpretive laws are those which clarify the meaning of a statute and are deemed to relate back to the time that the law was originally enacted. Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of laws.
Laws that are procedural or interpretive may be applied retroactively. (Citations omitted.)
. In the instant case, Act 125 contains nothing to indicate legislative intent with *1203 regard to its application. Therefore, the next step is to classify the legislation as substantive, procedural or interpretative.[3] The supreme court has consistently held that changes in procedural rules made after the commission of the offense, but before the commencement of trial, may be employed at a defendant’s trial. See State v. Loyd, 96-1805, pp. 12-13 (La.2/13/97), 689 So.2d 1321, 1328; State v. Sepulvado, 342 So.2d 630, 635-36 (La.1977), abrogated on other grounds, State ex rel. Olivieri v. State, 00-0172, 00-1767 (La.2/21/01), 779 So.2d 735, cert. denied, 533 U.S. 936, 121 S.Ct. 2566, 150 L.Ed.2d 730 (2001) and 534 U.S. 892, 122 S.Ct. 208, 151 L.Ed.2d 148 (2001).[4]
1rA review of the reported jurisprudence reveals no cases addressing the retroactivity of the amendment to LSA-R.S. 14:30 C with respect to the non-unanimous verdict issue. However, in State v. Lewis, 09-846, pp. 6-11 (La.App. 3 Cir. 4/7/10), 33 So.3d 1046, 1053-55, writ denied, 10-0967 (La.11/24/10), 50 So.3d 825, the third circuit considered the retroactive application of this exact amendment in a slightly different context. In Lewis, the defendant was tried after the effective date of the 2007 amendment to LSA-R.S. 14:30 C on two counts of first degree murder that occurred in 2004. After the state indicated it would not seek the death penalty, the defendant waived his right to a jury trial. On appeal, the defendant argued the waiver of a jury trial was invalid because his case must be treated as a capital case, regardless of whether the state was seeking the death penalty. Under LSA-Const. Art. I, § 17(A) and LSA-C.Cr.P. arts. 780 A and 782 B, a defendant may not waive his right to a jury trial in a capital case. The third circuit rejected the defendant’s contention, concluding that the 2007 amendment to LSA-R.S. 14:30 C, together with the state’s decision not to seek the death penalty, removed the case from the realm of capital cases, thereby allowing a valid waiver of the defendant’s right to a jury trial. Lewis, 09-846 at p. 11, 33 So.3d at 1055. Thus, the third circuit retroactively applied the amendment to LSA-R.S. 14:30 C to the defendant’s trial, even though it was not in effect when the offenses were committed.
Further, in State v. Kinsel, 00-1610, p. 12 (La.App. 5 Cir. 3/28/01), 783 So.2d 532, 539, writ denied, 01-1230 (La.3/28/02), 812 So.2d 641, the fifth circuit considered a 1997 amendment to LSA-R.S. 14:42 D that created a hybrid capital/non-capital statute for the crime of aggravated rape of a child below the age of twelve. Under the amendment, if the state opted to seek a penalty of life imprisonment, rather than a capital verdict, only ten of twelve jurors were required to concur in the verdict. Even though the state did not seek the death penalty in Kinsel, the defendant therein argued a unanimous verdict | ¡^nevertheless was required, since the 1997 amendment was not in effect when the crime was committed. The fifth circuit *1204 rejected this argument, explaining its holding as follows:
Although LSA-R.S. 14:42 D(2)(b) was not in effect at the time that defendant committed the alleged offenses, it had been enacted prior to the time of defendant’s trial. We find this procedural provision applicable to the instant case. As a result, the provisions of C.Cr.P. art. 782 were properly triggered when the state did not seek the death penalty. Accordingly, we find that the trial court did not err in failing to require a unanimous verdict for defendant’s aggravated rape conviction.
Kinsel, 00-1610 at pp. 12-13, 783 So.2d at 539. We agree with this rationale.[5]
The requirement of a unanimous verdict in capital cases is a procedural rule. See Goodley, 398 So.2d at 1070. Moreover, the supreme court has held that changes in procedural rules effective after the commission of the offense, but before the commencement of trial, may be applied at a defendant’s trial. See Loyd, 96-1805 at pp. 12-13, 689 So.2d at 1328; Sepulvado, 342 So.2d at 635-36. Accordingly, based on our review of the law and jurisprudence, particularly the conclusions reached by the courts in Lewis and Kinsel, we find that the amendment to La. R.S. 14:30 C granting the state the option of not seeking a capital verdict in first degree murder cases was procedural in nature and, therefore, retroactive to the trial of the instant matter. See Loyd, 96-1805 at pp. 12-13, 689 So.2d at 1328; Sepulvado, 342 So.2d at 635-36.
We are aware that the third circuit reached an apparently contrary conclusion in State v. Breaux, 08-1061 (La.App. 3 Cir. 4/1/09), 6 So.3d 982. In Breaux, the third circuit held that the procedural rules applicable to capital cases, including unanimous verdicts, were required in a situation where the death penalty was applicable when most of the offenses were committed, even though the death penalty could not be carried out at the time of the defendant’s | in2008 trial because of rulings of the United States Supreme Court. See Breaux, 08-1061 at p. 8, 6 So.3d at 988. However, because we find the analysis expressed in the Lewis and Kinsel cases more persuasive, the holding of Breaux does not affect the conclusion we have reached in the present case. Significantly, in Lewis, the third circuit apparently did not find its earlier decision in Breaux to be any impediment to its conclusion that the amendment to LSA-R.S. 14:30 C should be applied retroactively.
Defendant additionally argues that the provisions of LSA-Const. Art. 1, § 17(A) and LSA-C.Cr.P. art. 782 A allowing non-unanimous jury verdicts in felony cases violate the Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment to the United States Constitution. Initially, we note that this argument has been repeatedly rejected by the courts of this state. See State v. Bertrand, 08-2215, p. 6 (La.3/17/09), 6 So.3d 738, 742; State v. Smith, 06-0820, p. 24 (La.App. 1 Cir. 12/28/06), 952 So.2d 1, 16, writ denied, 07-0211 (La.9/28/07), 964 So.2d 352. Nev *1205 ertheless, defendant urges reconsideration of this issue in light of recent pronouncements of the United States Supreme Court, particularly in McDonald v. City of Chicago, — U.S. -, 130 S.Ct. 3020, 3035, 177 L.Ed.2d 894 (2010), that he claims call into serious question the holding of Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), that non-unanimous verdicts in state felony prosecutions are permissible under the Sixth Amendment. In support of this contention, he quotes language from McDonald to the effect that the “incorporated Bill of Rights protections ‘are all to be enforced against the States under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment’” and “[t]he relationship between the Bill of Rights’ guarantees and the States must be governed by a single, neutral principle.” McDonald, 130 S.Ct. at 3035, 3048. Thus, defendant argues the issue of jury unanimity is ripe for reconsideration.
| t defendant’s contention is meritless. In McDonald, the Supreme Court recognized that most, but not all, of the protections of the Bill of Rights have been incorporated to the states through the Fourteenth Amendment. McDonald, 130 S.Ct. at 3034-35. However, citing Apo-daca in support of the proposition, the Supreme Court specifically stated in McDonald that, although the Sixth Amendment requires unanimous jury verdicts in federal criminal trials, it does not require unanimous jury verdicts in state criminal trials. McDonald, 130 S.Ct. at 3035 n. 14. Therefore, contrary to defendant’s assertions, in McDonald the Supreme Court actually reaffirmed the holding of Apodaca, rather than calling it into question.[6]
Defendant further argues that LSA-R.S. 14:30 C, as amended by Act 125, is unconstitutional because it conflicts with the requirement of LSA-Const. Art. I, § 17(A) that there be a unanimous verdict for crimes that carry the death penalty, even if the death penalty is not sought by the state. We disagree. Based on our review of the law and the jurisprudence, we conclude there is no conflict between LSA-R.S. 14:30 C and LSA-Const. Art. I, § 17(A). Prior to the 2007 amendment to LSA-R.S. 14:30 C, first degree murder was a capital offense. As such, prosecutions for first degree murder prior to the amendment were governed by Goodley and required a unanimous verdict, regardless of whether the state elected to pursue the death sentence. However, the 2007 amendment to LSA-R.S. 14:30 C created a hybrid capital/non-capital first degree murder statute. By enacting this amendment, the legislature clearly signaled its intention that the state should have the authority to determine the mode of trial to be utilized on a charge of first degree murder, by electing either to seek a | ^capital or a non-capital verdict. Thus, as amended, LSA-R.S. 14:30 C(2) now allows *1206 for a non-capital first degree murder charge when the state so elects. This legislative amendment in no way violates LSA-Const. Art. I, § 17(A). Rather, the amendment reflects an attempt by the legislature to avoid violating the constitution and to modify the penalty provisions of the first degree murder statute in order to avoid conflict with the holding in Goodley. See Mizell, 05-2516 at pp. 6-7, 938 So.2d at 716 (wherein this Court dealt with a similar issue with respect to the 1997 amendment to LSA-R.S. 14:42 creating a hybrid capital/non-capital aggravated rape statute). Contrary to defendant’s assertions, the legislative amendment to LSA-R.S. 14:30 C does not deprive defendant of the constitutional requirement of a unanimous verdict. A unanimous verdict is still required when the state opts to prosecute under LSA-R.S. 14:30 C(l), the capital verdict portion of the hybrid statute. By enacting LSA-R.S. 14:30 C(2), the non-capital portion of the hybrid statute, the legislature created the “attendant provision” referred to in Goodley, by which the state is vested with the authority to pursue a violation of the first degree murder statute as a non-capital life imprisonment offense. See Mizell, 05-2516 at p. 7, 938 So.2d at 716.
Once the district attorney opted to prosecute the instant offenses as non-capital life imprisonment offenses, capital punishment was no longer a possibility. Accordingly, the portion of LSA-Const. Art. I, § 17(A) pertaining to a criminal case in which the punishment “may be capital” was no longer applicable. Instead, the provisions of LSA-C.Cr.P. art. 782 A relative to cases in which punishment is necessarily confinement at hard labor were triggered. See Mizell, 05-2516 at pp. 7-8, 938 So.2d at 716-17. Under LSA-Const. Art. I, § 17(A) and LSA-C.Cr.P. art. 782 A, in cases where punishment is necessarily at hard labor, the case shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. As we noted in Mizell, 05-2516 at p. 8, 938 So.2d at 717, allowing the state the discretion to elect the manner in which it will prosecute an offense does not infringe upon protections guaranteed by the constitution, because what the legislature gives, it may take away. Accordingly, |1sLSA-R.S. 14:30 C, as amended by Act 125, does not conflict with the provisions of LSA-Const. Art. I, § 17(A).
For the above reasons, the trial court did not err in denying defendant’s motion for new trial that was based on his claim that the non-unanimous verdicts were invalid. This assignment of error lacks merit.
INEFFECTIVE ASSISTANCE OF COUNSEL
In his second assignment of error, defendant argues that his convictions should be reversed because he received ineffective assistance of counsel. Specifically, he contends that his attorney failed to exercise due diligence in preparing and presenting his defense, since he failed to call three fact/impeachment witnesses at trial whose testimony would have undermined the credibility of the state’s most important witness, Frank Knight. At trial, the defense attacked Knight’s credibility on several grounds, including his plea bargain with the state, his prior criminal history, several inconsistencies in the statements he gave the police, and his admission that he initially lied to the police regarding certain details of the offenses. Defendant contends the additional witnesses, who would have undermined Knight’s credibility, were crucial to his defense, since Knight’s testimony was the strongest evidence presented by the state — there was no other eyewitness testi *1207 mony or physical evidence connecting defendant to the crimes.
At the hearing on the motion for new trial, which was based in part on a claim of newly discovered evidence consisting of the testimony of several witnesses, the defense called Frank Knight’s mother, Linda Knight, and Glen Willis, a former cellmate of Frank Knight, to testify. Ms. Knight testified that her son never mentioned the names of any co-perpetrators and never told her that he participated in the murders. She testified she learned of his involvement in the murders from his former cellmate, Willis.
Willis testified that he was a cellmate of Knight at the St. Tammany Parish Jail during the time that Knight was meeting with the police. He claims that he was close to Knight during this period, and that Knight confided in him a lot. |) 4 Accor ding to Willis, Knight initially named two individuals other than defendant and Kaigler as his co-perpetrators, but changed his story several times regarding the number of participants, the identity of the participants, and other details of the murders as he talked to the police. Willis testified that Knight was trying to make a deal so that he could get out of jail, “[bjeeause he was afraid things was going to unravel on him.”
Additionally, the defense proffered a summary of the testimony that Wanda Bishop, defendant’s wife, would have given if called to testify. According to the proffer, she would have testified that defendant was living with a white woman in Mississippi on the date the murders were committed.
In denying the motion for new trial, the trial court noted that the names of the witnesses in question were referenced in a police report provided to the defense through discovery, and, therefore, were not “newly discovered.” In its oral reasons denying the motion, the trial court stated that the evidence could have been discovered by defendant by the exercise of due diligence prior to trial. In light of the trial court’s remarks, defendant argues he was denied the benefit of crucial witnesses at trial, who would have undermined Knight’s credibility, because his defense counsel failed to exercise due diligence.
In Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-part test for review of a convicted defendant’s claim that his counsel’s assistance was so defective as to require reversal of a conviction. First, the defendant must show that counsel’s performance is deficient. Second, the defendant must show that this deficient performance prejudiced the defense. A claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted, rather than on appeal. However, where the record discloses sufficient evidence to decide the issue of ineffective assistance of counsel when raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Lockhart, 629 So.2d 1195, 1207 (La.App. 1 Cir.1993), writ denied, 94-0050 (La.4/7/94), 635 So.2d 1132.
Initially, we note that defendant’s allegations in this case cannot be reviewed on appeal, because the record does not disclose sufficient evidence to demonstrate whether or not they contain merit. These allegations involve the production of evidence by the defense, and whether or not to call certain witnesses for the defense. Generally, decisions relating to investigation, preparation, and strategy can not be reviewed on appeal, because the record contains insufficient information. See *1208 Lockhart, 629 So.2d at 1208; State v. Martin, 607 So.2d 775, 788 (La.App. 1 Cir. 1992).
In the instant case, the record contains the substance of the testimony of the witnesses that defendant contends should have been called to testify at trial. Further, it also contains defense counsel’s explanation that he did not call defendant’s wife to testify at trial because he did not want to take the risk that she would have to testify on cross-examination that the reason she left defendant was because of his dealings with drugs and the people with whom he was associating. Defense counsel did not want this information to come out during trial. However, the record does not contain defense counsel’s response to the claims of ineffective assistance of counsel with respect to the other witnesses referenced by defendant. Therefore, defendant’s claims cannot be fully evaluated upon the record before us on appeal. On application for post-conviction relief, the quality of defense counsel’s assistance can be fully developed and explored.[7] See State v. Prudholm, 446 So.2d 729, 737 (La.1984).
For the above reasons, defendant’s claim of ineffective assistance of counsel is not subject to appellate review in the instant case.
REVIEW FOR ERROR
| ir,Upon routine review of the record for error pursuant to LSA-C.Cr.P. art. 920(2), we discovered that the trial court sentenced defendant without waiting at least twenty-four hours after denying his second supplemental motion for new trial, as required by LSA-C.Cr.P. art. 873.[8] In cases where the defendant either contests his sentence or complains of the absence of a 24-hour delay, the failure of the trial court to observe the statutory delay or to obtain a waiver thereof normally would require the sentence to be vacated and the case remanded for resentencing. See State v. Augustine, 555 So.2d 1331, 1333-35 (La.1990). However, in the instant case, defendant neither contests his sentences nor complains about the absence of the 24-hour delay. Moreover, Louisiana jurisprudence has recognized exceptions to the requirement that a sentence be vacated in cases where the failure to observe the statutory delay is harmless. One instance in which the trial court’s failure to observe the 24-hour delay has been found to be harmless is where the sentence imposed is mandatory in nature. See State v. Seals, 95-0305, p. 17 (La.11/25/96), 684 So.2d 368, 380, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997). Thus, since the life sentences imposed in the instant case were mandatory under LSA-R.S. 14:30 C(2), the trial court’s failure to observe the statutory 24-hour delay was harmless error.
CONVICTIONS AND SENTENCES AFFIRMED.

. Kaigler has also appealed, and that matter is before this Court under docket number 2010 KA 1839, also decided this date.

. In exchange for his cooperation, the state agreed to amend the indictment charging Knight with four counts of first degree murder, and to allow him to plead guilty to the reduced charge of accessory after the fact to first degree murder, as well as to the additional charge of distribution of cocaine. It was agreed that he would be sentenced to a minimum of fifteen years at hard labor and up to the maximum sentences permissible, which was five years for the accessory after the fact conviction and thirty years for the distribution conviction, consecutive to any other sentences he was serving. See LSA-R.S. 14:25 & 40:967 B(4)(b). Additionally, the state agreed that Knight would not be billed as a multiple offender.

. Although LSA-R.S. 1:2 provides that ''[n]o Section of the Revised Statutes is retroactive unless it is expressly so stated,” this provision has been held to apply only to substantive and not to procedural or interpretative legislation. See Manuel v. Louisiana Sheriffs Risk Management Fund, 95-0406, p. 8 (La.11/27/95), 664 So.2d 81, 86.

. Prior to Olivieri, the test utilized by the Louisiana Supreme Court in analyzing whether a law fell within the ambit of the ex post facto clause was whether or not the law altered the situation of the defendant to his disadvantage. See Sepulvado, 342 So.2d at 635; Olivieri, 00-0172, 001767 at p. 14, 779 So.2d at 743. In Olivieri, the supreme court disavowed this test in favor of a much narrower analysis that determines “whether the change alters the definition of criminal conduct or increases the penalty.” Olivieri, 00-0172, 00-1767 at pp. 15-16, 779 So.2d at 744.

. In arguing that the rationale of Kinsel should not be followed, defendant cites language from this Court's decision in State v. Mizell, 05-2516, p. 6 (La.App. 1 Cir. 6/9/06), 938 So.2d 712, 716, that could be construed as indicating, contrary to the holding in Kin-sel, that the 1997 amendment to LSA-R.S. 14:42 should not be applied retroactively. However, we note that the retroactivity of the 1997 amendment was not at issue in Mizell, because the offense charged therein was committed well after the effective date of this amendment. Hence, the language cited by the defendant is dicta and, therefore, not binding. See State v. Bernard, 09-1178, p. 6 (La.3/16/10), 31 So.3d 1025, 1029.

. In further support of his contention that the holding of Apodaca had been called into question by recent Supreme Court decisions, the defendant also cites Blakely v. Washington, 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and Apprendi v. New Jersey, 530 U.S. 466, 477, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). However, since the issue of jury unanimity was not under consideration by the Supreme Court in either of these cases, in our view, they have no relevance to the holding of Apodaca. We further note that the United States Supreme Court recently denied an application for a writ of certiorari in a Louisiana case, State v. Barbour, 09-1258 (La.App. 4 Cir. 3/24/10), 35 So.3d 1142, writ denied, 10-0934 (La.11/19/10), 49 So.3d 396, cert. denied, - U.S. -, 131 S.Ct. 1477, 179 L.Ed.2d 302 (2011) cited by defendant in brief. According to defendant's allegations, the writ application in Barbour raised the issue of non-unanimous jury verdicts.

. Defendant would have to satisfy the requirements of LSA-C.Cr.P. art. 924, et seq., in order to receive an evidentiary hearing.

. The second supplemental motion for new trial was filed on behalf of Kaigler and defendant by Kaigler's defense counsel, although defendant was still represented by his trial counsel at that time. However, defendant's defense counsel adopted the supplemental motion for new trial on defendant’s behalf.