WELCH, J.
|j>The defendant, Abert L. Huey, was charged by bill of information with armed robbery, a violation of La. R.S. 14:64.[1] The defendant pled not guilty and, following a jury trial, was found guilty as charged. The defendant filed a motion for postverdict judgment of acquittal, which was denied. He was sentenced to thirty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant now appeals, designating three assignments of error. We affirm the conviction and sentence.
FACTS
On the evening of November 20, 2010, Jennifer Moore went to Maeknell Christopher’s trailer on 68th Avenue in Scotland-ville (Baton Rouge). Moore, who knew Christopher, asked if he could loan her some money. Christopher gave her $5.00. Moore said she was going to the store, then left the trailer. About fifteen minutes later, Moore returned to the trailer with the defendant, whom Christopher did not know. Moore asked Christopher for more money. Christopher surmised that when Moore left with the $5.00, she would soon return asking for more money. Thus, he hid his money in his sock and told Moore he had no more money when she returned asking for more. Apparently not believing Christopher, Moore began searching his pockets for money. As Christopher began struggling to keep Moore’s hands off of him, the defendant approached and told Christopher that if he had something to give it to Moore. The defendant then lifted his shirt to reveal a knife handle protruding from his waistband. Christopher gave Moore $155.00 from his sock. Moore and the defendant began arguing over the money, and the defendant took the money from her. The defendant and Moore left the trailer. Moore had also taken Christopher’s cell phone. Thereafter, Christopher drove to Rthe fourth district police station to file a complaint. During the course of their investigation, the police interviewed Moore, who directed them to the defendant’s house. Both the defendant and Moore lived only a few blocks from Christopher.
ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, the defendant argues the evidence was insufficient to support the conviction for armed robbery. Specifically, the defendant contends that he did not take Christopher’s money by force or intimidation, and that he was not a principal to Moore’s taking of the money.
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable *30 doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See La.C.Cr.P. art. 821(B); State v. Ordodi, 2006-0207 (La.11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). The Jackson standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Patorno, 2001-2585 (La.App. 1st Cir.6/21/02), 822 So.2d 141,144.
Louisiana Revised Statute 14:64 provides in pertinent part:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
The parties to crimes are classified as principals and accessories after the 4fact. La. R.S. 14:23. Principals are all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime. La. R.S. 14:24. Only those persons who knowingly participate in the planning or execution of a crime are principals. An individual may be convicted as a principal only for those crimes for which he personally has the requisite mental state. See State v. Pierre, 93-0893 (La.2/3/94), 631 So.2d 427, 428 (per curiam ). The State may prove a defendant guilty by showing that he served as a principal to the crime by aiding and abetting another. Under this theory, the defendant need not have actually performed the taking to be found guilty of a robbery. State v. Smith, 513 So.2d 438, 444-45 (La.App. 2nd Cir.1987). Further, a defendant convicted as a principal need not have personally held a weapon to be found guilty of armed robbery. State v. Dominick, 354 So.2d 1316, 1320 (La.1978). One who aids and abets in the commission of a crime may be charged and convicted with a higher or lower degree of the crime, depending upon the mental element proved at trial. State v. Holmes, 388 So.2d 722, 726 (La.1980).
Armed robbery is a general intent crime. In general intent crimes, the criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal. State v. Payne, 540 So.2d 520, 523-24 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989). To convict a defendant of armed robbery, the State is required to prove: (1) a taking; (2) of anything of value; (3) from a person or in the immediate control of another; (4) by the use of force or intimidation; (5) while armed with a dangerous weapon. State v. Jeselink, 35,189 (La.App. 2nd Cir.10/31/01), 799 So.2d 684, 690.
While the defendant does not dispute he was present during the “giving” of the money by Christopher to Moore, he asserts that no taking occurred and that he |fiwas not a principal because the State failed to prove Moore had a plan to rob Christopher. According to the defendant, Christopher provided Moore with money and she provided him with “sex, drugs, or whatever.” Thus, since there was a giving of money to Moore and she failed “to follow through on her part of the bargain,” no taking occurred. The defendant further asserts that “the giving of the money” [taking] was not the result of force or intimidation.” According to the defendant, Christopher gave Moore the money in the *31 bedroom while the defendant waited in the living room. The defendant acknowledges that Christopher testified that the defendant told him, “If you got something, give it to her,” then lifted his shirt to reveal “a black handle sticking from his waistband,” but maintains that he took nothing from Christopher and made no demands for money. According to the defendant, Christopher was not intimidated or threatened, and he did not react to his alleged observation of a handle. Regarding the principal issue, the defendant asserts the State did not prove he was a principal to Moore’s “dispute with” Christopher, and that its case rested on “guilt by association” based on the defendant’s merely being with Moore.
Testimony at trial established that Moore and the defendant went to Christopher’s trailer, after Moore had earlier gone by the trailer and gotten $5.00 from Christopher. Christopher, knowing that Moore was probably coming back for more money, hid his money in his sock. When Moore asked for money, Christopher told her he did not have any. At this point, Moore began frisking Christopher, looking for money. While Christopher was trying to stave off Moore, the defendant approached them and told Christopher that if he had any money on him to give it to Moore. Christopher and Moore went into the bedroom, where Christopher gave Moore the money. Detective Ira Roberts, with the Baton Rouge Police Department, who interviewed Christopher after the robbery, testified that Christopher told him that the defendant raised his shirt, showed him a knife he had | ñstuck in his waistband, and told him not to give Moore any trouble and give her the money. Christopher testified that when the defendant revealed the knife, he feared for his life, thought it was of no use to get “hurt over nothing,” and gave Moore the $155.00 that he had. When Christopher and Moore moved back into the living room, Christopher observed the defendant and Moore argue over the money. After several minutes of squabbling, the defendant took control of the money. The defendant and Moore then left the trailer. Moore had also taken Christopher’s cell phone. Christopher testified that he did not have a sexual relationship with Moore; however, Detective Roberts testified that he and Corporal Donald Johnson spoke to Christopher after the robbery. Detective Roberts’s report indicated that Christopher advised Corporal Johnson that “he has a sexual relationship with the suspect, Jennifer Moore.”
The foregoing facts, as accepted by the trier of fact, clearly indicated that an armed robbery took place and, specifically, that acting in concert with Moore, the defendant, through intimidation, took Christopher’s money. The defendant was not merely “present” in the house, as suggested by him in his brief. Rather, he was an active participant in the robbery. In revealing a weapon and telling the victim to give Moore the money, the defendant aided and abetted Moore in taking from Christopher money that was in his immediate control. We note, as well, that despite the defendant’s assertion that Christopher merely gave the money to Moore, there was clearly a taking as contemplated under La. R.S. 14:64(A). After refusing, both verbally and physically, to give Moore the money, Christopher finally relinquished his money only after the defendant made known to him that he was armed with a knife and told him to give the money to Moore. The defendant (and Moore) clearly created an atmosphere of fear and intimidation. See State v. Quac Tran, 2008-1103 (La.App. 4th Cir.8/13/09), 18 So.3d 165, 171-72, writ denied, 2009-2247 (La.4/16/10), 31 So.3d 1053. When a defendant creates an |7atmosphere of in *32 timidation, prompting the victim to reasonably react with fear for his life, an armed robbery conviction is justified. See State v. Boyance, 2005-1068 (La.App. 3rd Cir.3/1/06), 924 So.2d 437, 440-42, writ denied, 2006-1285 (La.11/22/06), 942 So.2d 553.
The jury heard all of the testimony and found the defendant guilty as charged. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact’s determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder’s determination of guilt. State v. Taylor, 97-2261 (La.App. 1st Cir.9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a “thirteenth juror” in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La.App. 1st Cir.1985). The testimony of the victim alone is sufficient to prove the elements of the offense. State v. Orgeron, 512 So.2d 467, 469 (La.App. 1st Cir.1987), writ denied, 519 So.2d 113 (La.1988).
When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La.App. 1st Cir.), writ denied, 514 So.2d 126 (La.1987). In finding the defendant guilty, the jury clearly rejected the defense’s theory of innocence of non-participation in the armed robbery and reasonably concluded that he was a willing, active participant |Rin the armed robbery. See Moten, 510 So.2d at 61. See also La. R.S. 14:24; Smith, 513 So.2d at 444-45.
After a thorough review of the record, we find that the evidence supports the jury’s verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of armed robbery. See State v. Calloway, 2007-2306 (La.1/21/09), 1 So.3d 417, 418 (per curiam).
ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, the defendant argues that the 11-1 non-unanimous verdict violates the United States Constitution. Specifically, the defendant contends that La.C.Cr.P. art. 782(A), as applied to this case, violates his right to due process.
Whoever commits the crime of armed robbery shall be imprisoned at hard labor. La. R.S. 14:64(B). Louisiana Constitution article I, § 17(A) and Louisiana Code of Criminal Procedure article 782(A) provide that in cases where punishment is necessarily confinement at hard labor, the case shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. Under both state and federal jurisprudence, a criminal conviction by a less than unanimous jury does not violate a defendant’s right to trial by jury specified by the Sixth Amendment and made applicable to the states by the Fourteenth *33 Amendment. See Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972); State v. Belgard, 410 So.2d 720, 726 (La.1982); State v. Shanks, 97-1885 (La.App. 1st Cir.6/29/98), 715 So.2d 157, 164-65.
The defendant suggests that subsequent legal developments call Apodaca into serious question and allow this court to find that Article 782 is | ¡¡unconstitutional. In support of this assertion, the defendant cites the decisions of Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and McDonald v. City of Chicago, Ill., 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010). The defendant’s reliance on this jurisprudence is misplaced. Blakely addressed the issue of sentence enhancement made by a trial court, and had no bearing on the unconstitutionality of non-unanimous verdicts. See State v. Smith, 2009-100 (La.App. 5th Cir.8/25/09), 20 So.3d 501, 507-08, writ denied, 2009-2102 (La.4/5/10), 31 So.3d 357. The McDonald Court, while holding that the Second Amendment right to keep and bear arms is fully applicable to the States through the Fourteenth Amendment, did nothing to alter the well-established jurisprudence holding that the Due Process Clause does not require unanimous jury verdicts in state criminal trials. See McDonald, 130 S.Ct. at 3035 n. 14. The McDonald Court specifically stated that, although the Sixth Amendment requires unanimous jury verdicts in federal criminal trials, it does not require unanimous jury verdicts in state criminal trials. See McDonald, 130 S.Ct. at 3035 n. 14; State v. Bishop, 2010-1840 (La.App. 1st Cir.6/10/11), 68 So.3d 1197, 1205, writ denied, 2011-1530 (La.12/16/11), 76 So.3d 1203. The defendant’s argument has been repeatedly rejected by this court. See State v. Smith, 2006-0820 (La.App. 1st Cir.12/28/06), 952 So.2d 1, 23-24, writ denied, 2007-0211 (La.9/28/07), 964 So.2d 352; State v. Caples, 2005-2517 (La.App. 1st Cir.6/9/06), 938 So.2d 147, 156-57, writ denied, 2006-2466 (La.4/27/07), 955 So.2d 684.
The defendant also asserts in his brief that the unanimity requirement serves as a vital protection against insidious influences, noting that Louisiana adopted its non-unanimous jury verdict rule in its 1898 constitutional convention, whose mission it was “to establish the supremacy of the white race in this state.” (Defendant’s brief, pp. 15-16). Our supreme court in State v. Bertrand, 2008-2215 (La.3/17/09), 6 So.3d 738, addressed this issue over four years ago: “Finally, 110defendants argue that the use of non-unanimous verdicts have an insidious racial component, allow minority viewpoints to be ignored, and is likely to chill participation by the precise groups whose exclusion the Constitution has proscribed.” Id. at 742. The Bertrand Court found that a non-unanimous twelve-person jury verdict is constitutional and that Article 782 does not violate the Fifth, Sixth, and Fourteenth Amendments. Id. at 743. Regarding the equal protection argument that such verdicts have an insidious racial component, the Bertrand Court noted that the issue had already been decided as meritless by a majority of the United States Supreme Court in Apodaca. Id.
Thus, while Apodaca was a plurality rather than a majority decision, the United States Supreme Court, as well as other courts, has cited or discussed the opinion various times since its issuance and, on each of these occasions, it is apparent that its holding as to non-unanimous jury verdicts represents well-settled law. Bertrand, 6 So.3d at 742-43. Thus, La. C.Cr.P. art. 782(A) is not unconstitutional and, therefore, not in violation of the defendant’s constitutional rights. See State v. Hammond, 2012-1559 (La.App. 1st *34 Cir.3/25/18), 115 So.3d 513, 515, writ denied, 2013-0887 (La.11/8/13), 125 So.3d 442.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 3
In his third assignment of error, the defendant argues his sentence is unconstitutionally excessive. Specifically, the defendant contends that the trial court failed to consider several mitigating factors.
The Eighth Amendment to the United States Constitution and Article I, § 20, of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the |n offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Andrews, 94-0842 (La.App. 1st Cir.5/5/95), 655 So.2d 448, 454. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion, See State v. Holts, 525 So.2d 1241, 1245 (La.App. 1st Cir.1988). Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the trial court to consider when imposing sentence. While the entire checklist of La. C.Cr.P. art. 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. State v. Brown, 2002-2231 (La.App. 1st Cir.5/9/03), 849 So.2d 566, 569.
The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475, 478 (La.1982). The trial judge should review the defendant’s personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. See State v. Jones, 398 So.2d. 1049, 1051-52 (La.1981). On appellate review of a sentence, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. State v. Thomas, 98-1144 (La.10/9/98), 719 So.2d 49, 50 (per curiam).
In the instant matter, the defendant, facing a maximum sentence of ninety-nine years at hard labor, was sentenced to thirty years at hard labor. See La. R.S. 14:64(B). The defendant argues in his brief that the trial court overemphasized his | ^criminal past, that he played an insignificant role in the robbery, and that no injuries were sustained by Christopher. Moreover, the defendant suggests that Christopher bears some responsibility for the situation based on his activities and relationship with Moore.
It is clear in its reasons for sentence that the trial court thoroughly considered La.C.Cr.P. art. 894.1, including any mitigating factors, in arriving at an appropriate sentence. The trial court noted that the presentence investigation report recommended the maximum sentence. The defendant refused to admit guilt and asked that the trial court not throw his life away *35 because he has friends and family who care for him, and he is not a menace to society. Regarding the defendant’s criminal history, the trial court stated in pertinent part:
The defendant has the following juvenile record. He was arrested on February 9, 1974, and charged with theft. He was counseled and warned at intake. The defendant has an extensive criminal record as an adult which includes the following: On or about May 16, 1985, he was charged with simple robbery. Those charges were nolle prossed on October of 1986. On or about June 15, 1985, the defendant was arrested for illegal carrying of a weapon. He got 180 days in parish prison for that.
[[Image here]]
On or about May 5, 1988, the defendant was arrested and charged with possession of cocaine. He pled guilty and was sentenced to four years D.O.C. His parole was revoked on February 24, 1994.
[[Image here]]
On or about July 22,1997, the defendant was arrested and charged with possession with intent to distribute cocaine. On December 8, 1997, the defendant pled guilty to possession of cocaine in docket number 9-97-565. He received a three year suspended sentence and was placed on probation. His probation was revoked. On or about February 12, 1999, the defendant was arrested and charged with possession of schedule II. Those charges were dismissed.
On or about November 10, 2001, the defendant was arrested and charged with possession of a firearm by a convicted felon. The defendant pled guilty on July 8, 2002, to attempted felon in possession of a firearm and was sentenced to three years D.O.C. His parole was revoked on March 24, 2005, and February 27, 2007. On or about September 14, 2006, the defendant was arrested and charged with simple burglary. On November 13, 2007, the defendant pled guilty to illegal possession of stolen things greater than $500 and was sentenced to three years D.O.C. His parole was terminated satisfactorily on September 14, 2009. On or about November 24, 2010, he was [ ] arrested for the instant offense. Despite all that in his | isstatement, he said he was not a menace to society.
[[Image here]]
Well, it’s amazing to me anybody with that kind of a criminal history and a 5th felony offender can say you’re not a menace to society. I don’t know whether your neighbors consider you, but everybody else must, because that just took me ten minutes to read it into the record.
[[Image here]]
The Office of Probation and Parole notes the defendant’s criminal record reveals a lengthy criminal history with many arrests for crimes against the person. The defendant’s record reveals he has failed to adjust to probation and parole. Furthermore, the defendant has not taken responsibility for his action. He blames the court for faulty jury instruction which resulted in his guilty conviction. Their office recommends that the defendant be sentenced to 99 years, without benefit of probation, parole, or suspension of sentence. I agree with the Office of Probation and Parole that he’s got a lengthy criminal history that I just read, and in a lot of those we see crimes of robbery arrests, felon in possession, illegal carrying of weapons, in addition to the drugs, and you may be well liked and all that in your neighborhood, but I can tell you one person that we know of that would think that you’re *36 a menace to the society and that’s the victim in this case.
For the above reasons the court finds the defendant is in need of correctional treatment in a custodial environment.
Considering the trial court’s review of the circumstances, the nature of the crime, the defendant’s extensive criminal history, and the fact he was sentenced to less than one-third the maximum sentence, we find no abuse of discretion by the trial court. Accordingly, the sentence imposed by the trial court is not grossly disproportionate to the severity of the offense and, therefore, is not unconstitutionally excessive.
CONCLUSION
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
WHIPPLE, J. concurs.

. It appears from the record that the case of codefendant, Jennifer Moore, was severed from the instant case.